1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD ANTHONY BREWER,

11              Petitioner,                    No. CIV S-06-0382 GEB GGH P

12        vs.

13   D. L. RUNNELS, Warden, et al.,            ORDER

14              Respondents.

15   _____/

16              Petitioner, proceeding with appointed counsel, has filed a petition pursuant to 28

17   U.S.C. §2254.  Petitioner's November 2, 2006, motion for discovery came on for hearing on

18   December 14, 2006.  Petitioner was represented by David Martin.  Maureen Daly appeared for

19   respondent.

20              Petitioner was sentenced to life in prison without the possibility of parole, plus 25

21   years, following a 2000-2001 jury trial in Sacramento County wherein he was convicted of first

22   degree murder (Cal. Penal Code §§ 187(a), 189), found to have personally used a firearm (Cal.

23   Penal Code § 12022.5(a)), and wherein the special circumstance that the murder was committed

24   while petitioner was engaged in a robbery (Cal. Penal Code § 190.2(a)(17) was found true.

25   \\\\\

26   \\\\\

1

Petition, pp. 65-66, 73-74.[1] Petitioner was also convicted of attempted robbery (Cal. Penal Code §§ 664, 211), with the use of a firearm (Cal. Penal Code § 12022.5(a)), conspiracy to commit robbery (Cal. Penal Code §§ 182(a)(1), 211), assault with a deadly weapon (Cal. Penal Code §§ 245(a)(1), 12022.5(a)(1)), and possession of a firearm by a convicted felon (Cal. Penal Code § 12021(a)). Id.

At this time, the matter still proceeds upon the original pro se petition, wherein nine grounds have been set forth, of which only two are relevant to the pending motion.

> Ground 1: The trial court erred, and denied petitioner his Sixth Amendment and state constitutional rights to the effective assistance of counsel, when it denied the Sacramento County Public Defender's initial motion to withdraw from its representation of appellant [sic] due to an irreconcilable conflict within that office, and demanded a fuller explanation on the record of the conflict.

> Ground 2: The trial court denied petitioner his Sixth Amendment and state constitutional rights to the effective of assistance of counsel when it failed to fully disclose [to petitioner] the nature of the Assistant Public Defender's conflict in privately representing; petitioner as court-appointed counsel; thus petitioner's "waiver" of any conflict was neither fully informed, nor in writing, as required.

Petition, pp. 34-42.[2]

---

[1] From the Feb. 8, 2005, Third District Court of Appeal, unpublished opinion, as contained in the petition at pages 65 through 125.

[2] Petitioner represents that the claims set before the state appellate and supreme courts on his direct appeal were framed as follows: "ground I: the trial court erred, and denied appellate [sic] his Sixth Amendment and state constitutional rights to the effective assistance of counsel, when it denied the Sacramento County Public Defender's initial motion to withdraw from its representation of appellant due to an irreconcilable conflict within that office, and demanded a fuller explanation on the record of the conflict; ground II: the trial court erred, and denied appellate [sic] his Sixth Amendment and state constitutional rights to the effective of assistance of counsel, when it failed to fully disclose to appellant the nature of the APD's conflict in representing him; thus appellant's 'waiver' of any conflict was neither fully informed, nor in writing, as required." Petition, pp. 3, 34, at page 38 in the body of the argument, as to ground II, petitioner simply began with "the trial court denied...." In opposition, respondent has submitted the petitioner's petition for review, confirming the first two grounds as: 1) "the trial court erred, and denied petitioner his Sixth Amendment and state constitutional rights to the effective assistance of counsel, when it denied the Sacramento County Public Defender's initial motion to withdraw from its representation of appellant due to an irreconcilable conflict within that office,

1        By his motion, petitioner contends that he was not fully informed of the nature

2   and extent of the basis for the public defender's motion to withdraw when he agreed to have

3   Karol Repkow continue to represent him once she had resigned as an assistant public defender.

4   There is some tension between the claims set forth, in that, in claim 1, petitioner argues that the

5   trial court should not have sought further information regarding the basis for the Public

6   Defender's motion to withdraw from the case, but should simply have acquiesced to it; yet in

7   claim 2, what is challenged is the trial court's alleged failure to supply petitioner with adequate

8   information for him to have given an informed waiver as to any potential conflict before

9   accepting his former assistant or deputy public defender as private counsel, once her employment

10  with the Public Defender's office was severed.  Moreover, counsel appears to transmute the first

11  claim in characterizing it as a claim that the trial court erred, violating petitioner's Sixth

12  Amendment rights, by failing to seek a fuller explanation of the basis for the Public Defender's

13  position that Deputy Public Defender Repkow should be relieved as petitioner's counsel.

14  Motion, p. 3.  Further, petitioner asserts that his discovery request involves not only claims 1 and

15  2, but " a potential unexhausted claim that the Public Defender" provided ineffective assistance

16  of counsel by failing to advise petitioner fully of the reasons the Public Defender had for

17  believing that Repkow's representation would not be adequate under the Sixth Amendment.  Id.

18  Factual Background

19        No part of the trial record of this case has yet been lodged, so the court is unable

20  to verify the citations to the record made by either petitioner or respondent.  To the extent that

21  respondent materially disputes the accuracy, or provides further clarification, of petitioner's

22  version of the relevant factual background, which petitioner provides as the basis for the

23  _____

24  and demanded a fuller explanation on the record of the conflict"; 2) "the trial court denied
    petitioner his Sixth Amendment and state constitutional rights to the effective of assistance of
    counsel, when it failed to fully disclose to appellant the nature of the assistant public defender's

25  conflict in privately representing petitioner as court-appointed counsel; thus petitioner's "waiver"
    of any conflict was neither fully informed, nor in writing, as required."  Opp., Doc. 23-3, pp. 4,

26  19, 23

1  discovery motion, the court sets that dispute forth following the recitation of the facts as

2  presented by petitioner (more minor discrepancies are footnoted).

3          The Public Defender's office was appointed to represent petitioner
           on January 16, 1997, with assistant Public Defender Karol Repkow
4          being assigned to the case. CT 1; RT 2146. Trial officially began
           on November 1, 2000, but because of the number of pre-trial
5          motions in a three jury case, the opening statements had not been
           presented to Brewer's jury until March 20, 2001.[3] The court
6          excused the jury until Monday, April 2, 2001.

7          On March 29, 2001, Repkow sought and obtained a one week
           continuance because she was involved with a situation involving
8          her employment that was taking substantially all of her time. RT
           2120-2122. The following day, a Friday, a hearing was held on the
9          matter with Repkow not attending due to "the personal issue" and
           the prosecution expressing some concern about what had, or had
10         not, been disclosed to Brewer involving this issue. RT 2122-2124.

11         On the following court day, a Monday, Donald Manning,
           Repkow's supervisor, appeared with Repkow and informed the
12         court that the Public Defender's office was declaring a legal
           conflict.  RT 2132.  Burt Loehr, also from the Sacramento Public
13         Defender's Office, asked that the Public Defender's office be
           relieved because they did not believe Brewer could obtain "Sixth
14         Amendment adequate counsel" if Repkow continued to represent
           him. RT 2163. In particular, the Public Defender's office
15         "question[ed] her judgment" based upon her actions in another
           matter.  "[A]fter a full and thorough discussion of whether or not
16         we believe that she could provide effective assistance of counsel to
           Mr. Brewer, it was our judgment that she could not." RT
17         2159-2160.

18         Manning had been given the responsibility to investigate Repkow,
           informing the court that his report on the matter would be finished
19         within 30 days. RT 2167.  Besides the Public Defender Office's
           concern with the issue regarding "her conduct with a prior client,"
20         there was also concern regarding the fragility of her emotional
           stability and concern with "her conduct with other prior clients in
21         our office,...." RT 2171.

22         The Sacramento Public Defenders' Office, however, did not want
           to discuss their concerns regarding Repkow in front of petitioner.
23         RT 2176, 2181.  Based upon that concern, the court had petitioner
           removed prior to obtaining additional information from the Public
24         Defender regarding their belief that Repkow's [sic] was unable to

25         _____

26         [3] In the opposition, respondent sets forth that at RT 1822, the record shows that opening
    statements for petitioner's jury took place on March 19, 2001.

1    provide effective representation to petitioner. RT 2183.

2    At this hearing, Manning stated "the reason for the initial conflict[]
     was Ms. Repkow "passing contraband to clients in the jail, and,
3    further, an allegation by one of the clients regarding a relationship
     with Ms. Repkow." RT 2186. Although understood at the time, it
4    was never explicitly stated that this was a[n] "emotional
     relationship." Paulino Duran, the head of the Sacramento Public
5    Defender's Office, directed Repkow not to have any further contact
     with this client, but the contacts continued. RT 2185. Manning
6    informed the court that Repkow's telephone was apparently being
     monitored, as the Public Defender's office had been advised that
7    there had been numerous phone calls of a nonlegal nature from this
     previous client to Repkow. RT 2184. Manning further informed
8    the court that because of these violations that law enforcement
     informed them that they were revoking Repkow's privilege to
9    utilize the "the attorney-client room." RT 2184. Loehr stated that
     the Public Defender's office doubted that Repkow "right now [is]
10   able to properly understand her role as counselor." RT 2187.

11   The trial court never made any inquiry into the problems associated
     with "other clients" at that hearing or at the subsequent in camera
12   hearing on April 3, 2001, also held with petitioner being absent.
     RT 2183-2195.
13
     On April 3, 2001, Repkow advised the court that she intended to
14   resign from the Sacramento Public Defender's Office and seek
     reappointment as Brewer's counsel. RT 2193-2194. The court
15   granted this request subject to Brewer's acceptance. RT
     2198-2202. The situation was partially explained to Brewer, but he
16   was never told that Repkow had formed a personal relationship
     with a previous client nor that Repkow had been barred from
17   utilizing the attorney-client room. RT 2202-2206. There was,
     moreover, no mention whatsoever about the Public Defender's
18   concern regarding the handling of other client's [sic] cases. Ibid.

19   Based upon this incomplete information, Brewer agreed to accept
     Repkow as his appointed attorney in place of the Public Defender's
20   office. RT 2205-2206. Later, as Brewer began to learn more about
     the complaints against Repkow, and to perceive what appeared to
21   be a lack of focus on her part, Brewer filed nine separate Marsden
     motions, each unsuccessful, to have her relieved. E.g., RT
22   5079-5098, 6036-6043, 6231-6256. At one of these hearings,
     Brewer specifically complained that he had never been apprised of
23   the potential conflict because he had not attended the hearing in
     which this was discussed. RT 7821, 8047-8060.
24

25   Motion, pp. 4-6.

26   \\\\\

1    In the opposition (Opp.), respondent sets forth, at pages 4-17, a detailed

2    exposition of the factual background.  Respondent makes clear that in the Friday, March 30,

3    2001, court hearing at which Repkow was not herself present but was represented by Donald

4    Manning, her supervisor in the Public Defender's Office, Manning agreed with Repkow's prior

5    assessment to the court that Repkow would be ready for trial on April 9, 2001, if the continuance

6    she sought from the court on March 29, 2001 (having received the consent of the other counsel

7    for an ex parte in-chambers discussion with the court), for the week of April 2 to April 9, 2001,

8    were granted for her to prepare for trial as she had been involved in a personal employment

9    situation that had taken up too much of her time for the previous two weeks; the court granted the

10   continuance.  Opp., pp. 5-6.[4]  At an unspecified later time, respondent indicates that the court

11   revealed that on that same day, March 30, 2001, it had contacted the Public Defender, Paulino

12   Duran, and had received assurances that there would be no further interruptions and that Repkow

13   would be able to proceed until the end of trial.  Id., at p. 6.

14   When, on Monday, April 2, 2001, Loehr and Manning of the Public Defender's

15   Office asked to be relieved based on a conflict, a request with which Repkow did not agree, the

16   court inquired as to the change of position from the preceding Friday; Manning responded that a

17   re-evaluation and subsequent matters had led the office to conclude that petitioner could not

18   receive effective assistance of counsel if Repkow continued to represent him, and stated that he

19   was not prepared to go further on the record unless the court had an in camera hearing.  Opp., p.

20   7.  Manning repeated the request for an in camera hearing if the court wanted more detail and

21   Loehr stated that such a hearing would need to be without other counsel.  Id.  The in camera

22   hearing occurred between Repkow, petitioner, Manning, Loehr and the court, on April 2, 2001.

23   Id., at 8.  Manning and Loehr represented to the court that they were concerned about Repkow's

24

25   [4] Respondent cites to the reporter's transcript throughout the factual background set forth
     in the opposition, but the court will not set forth each such citation, as the trial record, as noted,
26   has not yet been lodged with this court.

judgment, or lapses thereof, with regard to conduct involving another client, her emotional state, her legal judgment and the possibility of adverse publicity regarding her.  Opp., pp. 8-9.  Loehr stated that the pending personnel matter was private and that perhaps petitioner should not be informed of such matters.  Id., at 9.  Repkow stated that matters to do with a former client had nothing to do with petitioner, that there had been no question about her professional relationship with petitioner, that any error in judgment with regard to another client did not impact her ability to represent petitioner.  Id.  When the court asked petitioner if he had spoken with Repkow and if he was requesting that she still represent him, he responded affirmatively.  Id.

Manning indicated, in response to the court's question as to whether or not he believed Repkow could adequately represent petitioner, that if the public became aware of information Duran had provided to Repkow in a letter, and "her conduct last week and on Friday, her conduct with a prior client, [and] her conduct with prior clients in our office," the office believed that adequate representation could not be guaranteed.  Opp., pp. 9-10.  Manning stated that the court had not taken an appropriate waiver and that a full written disclosure would be necessary, whereupon the court indicated that there was a proper procedure for taking a client waiver, but the court had wanted to hear if petitioner still wanted Repkow to represent him.  Opp., p. 10.

Ultimately, the court determined that it needed more information on the personnel matter, to discern how the conflict had arisen in the 48-hour period [between Friday, March 30, 2001, and Monday, April 2, 2001].  Opp., at p. 11.  At that point, on April 2, 2001, petitioner was excluded from the in camera hearing, at which Manning outlined events occurring from January 2001 through March 2001, including that the Sheriff's Department had revoked Repkow's privilege to use the attorney-client room, and evidently including that the Public Defender's Office had declared, in January, 2001, a conflict arising from Repkow's representation of another male client, with whom Repkow was directed at the time to have no further contact.  Opp., pp. 4, 11.  Although the disclosure to the court apparently included information that Repkow continued

7

1  to have contact with the former client in the attorney-client room at the jail (resulting in the

2  revocation of that privilege), had passed contraband to that individual and had used other inmates

3  to communicate with him, and that there had been numerous calls of a "nonlegal nature" between

4  the former client and Repkow, respondent insists that nowhere in the state court record does it

5  show that Repkow had a personal or romantic relationship with that client.  Opp., pp. 4 & n. 3, 5,

6  11.

7          Repkow disagreed with Manning and Loehr, maintaining that she was able to

8  represent petitioner competently and that the matters discussed had no connection to petitioner.

9  Opp., p. 11.  On April 3, 2001, when the in camera hearing resumed without petitioner, Repkow

10  informed the court of her intention to resign from the Public Defender's Office and to seek

11  reappointment as petitioner's private counsel, if petitioner should wish it; she reviewed her work

12  in the case since her January 1997 appointment and stated that she believed it was in petitioner's

13  best interest to keep her and that he wished for her to remain his counsel.  Id.

14          In denying the Public Defender's motion to withdraw in the presence of all

15  counsel and defendants, the court found no conflict of interest, asserting that the potential

16  conflict was between the Public Defender's Office and Repkow, rather than between petitioner

17  and Repkow, that the Public Defender's Office had not sufficiently justified its "dramatic

18  turnaround" with new information, and observing that to that time, Repkow had conducted

19  herself in petitioner's case "in nothing but a professional and courteous manner...."  Opp., pp. 11-

20  13.  The following colloquy took place between the court and petitioner:

21          THE COURT: Mr. Brewer, you've been here throughout these
           proceedings that have been brought with respect to a motion to
22          have the Public Defender's office removed from your further
           representation; is that correct, sir?
23
24          DEFENDANT BREWER: Yes, Your Honor.

25          THE COURT: You also were here yesterday during the in camera
           hearing and you heard all of the statements that were made by the
26          Public Defender's office with respect to the allegations concerning
           Ms. Repkow; is that correct?

8

1  MS. REPKOW: No, actually, Judge, remember at one time Mr. Brewer was removed from the courtroom at the request of the
2  Public Defender's office, so some of the matters that [sic] were discussed in Mr. Brewer's absence, some of them.
3
4  THE COURT: Some of them, but you have heard the concerns, have you not, of the Public Defender's office with respect to her
5  continued representation of you in this matter?
6  DEFENDANT BREWER: Yes, but I don't understand some of them, like IAC and all that.
7  THE COURT: Forgive me. The IAC referencing ineffective assistance of counsel, meaning the attorney is not able to
8  effectively represent his or her client.
9  Is there anything else you had not understood?
10 DEFENDANT BREWER: Well, pretty much all of it, but I still want Ms. Repkow to represent me.
11
12 THE COURT: When you say pretty much all of it, you don't understand all of it?
13 DEFENDANT BREWER: I mean, not really.
14 THE COURT: Well, let me just briefly inform you that you know at this time Ms. Repkow is employed by the Public Defender's
15 office.
16 DEFENDANT BREWER: Yes, sir.
17 THE COURT: And you understand Mr. Manning and Mr. Loehr are also employed by the Public Defender's office?
18
19 DEFENDANT BREWER: Yes, sir.
20 THE COURT: Okay. And you understand that Mr. Manning and Mr. Loehr have made a request of this Court that the Public
21 Defender's office be relieved from representing you.  You're aware of that?
22 DEFENDANT BREWER: Yes, sir.
23 THE COURT: And you are aware of the reason for them making that motion?
24
25 DEFENDANT BREWER: Yes, sir.
26 THE COURT: And the reason is that they do not feel that Ms. Repkow will be able to effectively represent you in this case. You

9

1   understand that?

2   DEFENDANT BREWER: Yes, sir.

3   THE COURT: And one of the reasons for that claim by the Public
    Defender's office is that there may be issues that Ms. Repkow may
4   have to deal with with respect to her employment with that office
    which they feel may affect her ability to be focused on this
5   case completely.  Do you understand that?

6   DEFENDANT BREWER: Yes, sir.

7   THE COURT: Are you following everything up to this point?

8   DEFENDANT BREWER: (Nodding head affirmatively.)

9   THE COURT: You have to stay [sic] yes so we have it on the
    record.
10

11  DEFENDANT BREWER: Yes, sir.

12  THE COURT: All right. The issue of the conflict of interest, as I
    stated earlier, is whether or not Ms. Repkow's representation and
    her effectiveness to represent you might in some way be distracted
13  or diluted because of some other factors in her life whether it
    be personal, employmentwise or other issues. Do you understand
14  that?

15  DEFENDANT BREWER: Yes, sir.

16  THE COURT: That is the main reason -- correct me if I'm wrong
    Mr. Manning or Mr. Loehr -- that the Public Defender's office is
17  not comfortable with Ms. Repkow continuing to represent you. Do
    you understand that, Mr. Brewer?
18
    DEFENDANT BREWER: Yes.
19
    THE COURT: And they are concerned her attention may be
20  divided among other things. I'm trying to repeat this so there's no
    question. You understand that?
21
    DEFENDANT BREWER: Yes.
22
    THE COURT: It is possible that if you proceed with your current
23  counsel, Ms. Repkow, that she may be distracted for some period
    of time and that however slightly that may increase your chances of
24  being convicted in this matter.  Do you understand that?

25  DEFENDANT BREWER: Yeah, I think so. Yes.

26  THE COURT: If you don't, clarify this because I'm trying to go as

                                    10

detailed as I can and try to give you all the potential problems you may run into.

The position is that if Ms. Repkow or anyone for that matter may be distracted by whatever is going on in their personal life that they may not be able to devote their full time to your case. That's what the Public Defender's office is saying. Ms. Repkow is saying that it won't. I want to make sure that you understand both sides. Do you see the situation here?

DEFENDANT BREWER: Yes.

THE COURT: And you understand that you have the right to be represented by an attorney who is conflict free. In other words, can devote substantially all of his or her time to representing you in this case. Do you understand that?

DEFENDANT BREWER: Yes.

THE COURT: Do you feel that you have had adequate time to discuss Ms. Repkow's continued representation of you with her? Have you talked about this?

DEFENDANT BREWER: Yes.

THE COURT: Are you comfortable that you had sufficient time to talk to her about this whole issue?

DEFENDANT BREWER: Comfortable with her?

THE COURT: Yes.

DEFENDANT BREWER: Yes.

THE COURT: I have called for and is present an attorney from the Indigent Defense Panel present in this courtroom. I am going to make an offer to you at this time that you speak to another attorney regarding the possible conflict. Do you wish to do this, speak to another attorney?

DEFENDANT BREWER: No. No, sir.

THE COURT: You're comfortable with the decision that you've made in this matter?

DEFENDANT BREWER: With Karol representing me?

THE COURT: Yes, absolutely.

DEFENDANT BREWER: Yes.

1  (RT 2202 -2206.)  Opp., pp. 13-16.

2          The court denied defense counsel's motion to withdraw, finding that petitioner

3  had been advised of his right to representation by conflict-free counsel; that he understood the

4  dangers of representation by counsel with a potential conflict; that he had discussed the potential

5  problems with his lawyer; and that petitioner had specifically knowingly, intelligently and

6  voluntarily waived any potential conflict of interest between himself and Repkow and/or

7  Repkow and the Public Defender's Office, underscoring that any conflict at that time was

8  perceived as potential, not actual.  (RT 2206.)  Opp., p. 16.

9          On April 9, 2001, Repkow submitted her resignation from the Public Defender's

10  Office; Manning moved for a five-month continuance so that another assistant public defender

11  could represent petitioner.  Id.  Repkow asked the court to appoint her as private counsel for

12  petitioner and petitioner told the court he wanted her to continue as his counsel.  Id.  The trial

13  court denied the public defender's motion for a continuance, granted a subsequent motion for the

14  Public Defender to be relieved of representing petitioner, and appointed Repkow as counsel for

15  petitioner in her individual capacity.  Opp., pp. 16-17.  Repkow was granted a one-week

16  continuance.  Id., at p. 17.  On April 12, 2001, Repkow and petitioner indicated that they each

17  had no problem with Repkow continuing to represent petitioner.  Id.  When the court referred to

18  petitioner's being present when members of the Public Defender's Office came to court,

19  petitioner stated, "Other than when you sent me out. And I didn't know what you were talking

20  about." (RT 2225.)   Id.  When the court told petitioner more resources were available through

21  the Public Defender's Office, Repkow indicated that her resources were still adequate and that

22  she had an investigator, to which petitioner did not express any problem. (RT 2225-2227.)  Id.

23  Discovery Standards

24          In regard to petitioner's motion for discovery, a habeas litigant does not enjoy the

25  presumptive entitlement to discovery of a traditional civil litigant.  Bracy v. Gramley, 520 U.S.

26  899, 903-05, 117 S. Ct. 1793, 1796-97 (1997).  Rather, discovery is available only in the

1  discretion of the court and for good cause shown.  Rules Governing Section 2254 Cases, Rule

2  6(a).  Good cause is shown when the specific factual allegations before the court show reason to

3  believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is

4  . . . entitled to relief . . ."  <u>Bracy</u>, 520 U.S. at 908-909, 117 S. Ct. 1793.

5  <u>Petitioner's Contentions</u>

6          Petitioner here argues that the need for discovery is "considerably more concrete"

7  than the situation in <u>Bracy</u>, wherein petitioner obtained discovery in the form of his trial judge's

8  own transcript and prosecution files to demonstrate that petitioner's due process rights were

9  violated because his case had been sandwiched between cases for which the judge had received

10 bribes, so that petitioner believed he was treated harshly to deflect attention from the leniency the

11 judge showed in cases in which he was bribed.  Petitioner contends that he was entitled to be

12 provided independent counsel to advise him prior to his having waived conflicts before accepting

13 the court's designation of Repkow as his attorney.  Motion, p. 6.  Petitioner was entitled to be

14 made aware of the problems that formed the basis for the Public Defender's belief that petitioner

15 would not receive "Sixth Amendment adequate counsel" should Repkow continue to represent

16 him, but with the court's cooperation that information was kept from petitioner.  Motion, p. 7.

17 Petitioner asserts that the Public Defender was obligated to keep him "reasonably informed of

18 significant developments in matters with regard to which the attorney has agreed to provide legal

19 services," quoting Cal. Bus. & Prof. Code § 6068(m).  Id.

20         Counsel for petitioner has made efforts to obtain the information voluntarily,

21 engaging in "substantial discussion" with the Public Defender's office, including with Donald

22 Manning, Steven Lewis and Paulino Duran [the Sacramento County Public Defender]; however,

23 the office declines to provide the information requested absent a court order.  Motion, p. 8;

24 Declaration of petitioner's counsel, David Martin (hereafter, Martin Dec.):

25         [I]n the course of my discussions with Paulino Duran, it was
        admitted that the primary focus of the Sacramento Public
26         Defender's Office did involve Repkow's romantic relationship

with an inmate and former client at the Sacramento County Jail.
Although it was never specifically stated, I got the impression from
Mr. Duran that there was more to the problems with Ms. Repkow
than was ever divulged in the courtroom.  The possibility that there
might not be any additional information of any substance outside
the existent record was broached by appellate counsel in an effort
to avoid a futile inquiry.  Neither Duran, nor anyone else from the
Sacramento Public Defender's Office, affirmed that possibility.

Martin Dec. ¶ 3.

          Petitioner maintains that he is entitled to information concerning the 2001

investigation of Repkow and all documents related to it.  Id.  Petitioner cites (motion, p. 9), inter

alia, Harris v. Nelson, 394 U.S. 286, 299-300 (1969), wherein the Supreme Court stated: "where

specific allegations before the court show reason to believe that the petitioner may, if the facts

are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to

relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate

inquiry."  Petitioner asks the court to issue a subpoena to obtain all documents with regard to

"the Sacramento Public Defender's Office's 2001 investigation of petitioner's trial attorney,

Karol Martin Repkow's ethics, professionalism and competency in representing her clients,...."

including any report prepared or being prepared by Donald Manning that was referenced in the

April 2, 2001, hearing.  Motion, pp. 1-4.

Opposition

          Respondent, in opposition, argues that petitioner has not shown good cause for the

discovery sought.  Opposition (Opp., p. 1).  Respondent contends that having failed to seek

discovery in state court, petitioner may not present evidence beyond the appellate record, citing

28 U.S.C. § 2254(d)(2) and § 2254(e)(2).  Opp., pp. 2, 18.  Respondent maintains that

petitioner's requested discovery seeks to transform his petition by making unexhausted

allegations not previously raised, rendering habeas relief barred by AEDPA.  Id.  Respondent

also asserts that the discovery at issue is sought on speculative and conclusory grounds.  Id.  In

addition to the claim that petitioner identified as potentially unexhausted, the claim of ineffective

14

1  assistance of counsel by the Public Defender in not fully informing petitioner of the reasons for

2  believing Repkow's representation was or would be inadequate, respondent states that the claim

3  that petitioner was entitled to independent counsel's advice before deciding to accept Repkow as

4  his trial lawyer is also unexhausted.  Opp., pp. 4-5, 21-22.  Respondent contends that petitioner

5  presented no state collateral attack and all claims petitioner made were contained in his petition

6  for review.  Respondent attaches as exhibits the state court appellate decision, the state supreme

7  court decision and petitioner's petition for review.

8          Because all of the claims were made on direct appeal, respondent argues, the

9  evidence was limited to the state appellate record, citing In re Carpenter, 9 Cal. 4th 634, 646

10 (1995) ("[a]ppellate jurisdiction is limited to the four corners of the record on appeal").

11 Respondent argues that the limitations applicable to evidentiary hearings should apply to Rule 6

12 discovery motions.  Opp., p. 20.  Under § 2254(e)(2), an evidentiary hearing on a claim is not to

13 be held if a petitioner has not developed "the factual basis of a claim in State court proceedings"

14 unless the claim relies on a previously unavailable new retroactive rule of constitutional law or a

15 factual predicate that could have been discovered previously by the exercise of due diligence, and

16 unless the underlying facts of "the claim would be sufficient to establish by clear and convincing

17 evidence that but for the constitutional error, no reasonable fact-finder would have found the

18 applicant guilty of the underlying offense."  Respondent avers that under § 2254(d)(2), the

19 question is whether the state courts were compelled to grant relief as to petitioner's claims based

20 on the evidence that was already before those courts.  Opp., p. 20.  Respondent maintains that

21 petitioner ignores the limitation of § 2254(d)(2), which does not permit habeas relief without a

22 showing that the state court decision "was based on an unreasonable determination of the facts in

23 light of the evidence presented in the State court proceeding."  Id., quoting § 2254(d)(2).  Since

24 no document petitioner now seeks was before the state courts and petitioner did not seek

25 discovery by way of a state habeas action, respondent argues, there is not good cause to permit

26 the requested discovery.  Opp., p. 21.  Respondent maintains that petitioner's premise is

1   speculative that petitioner's trial counsel was involved in a romantic relationship with a former

2   client because it is not indicated in the state court record, conceding that the word "relationship"

3   appears once in the record.  Id.

4   Reply

5               Petitioner seeks to subsume his discovery requests within the exhausted claims 1

6   and 2, makes the point as to limitations of discovery in state courts, states that the issues were

7   clearly stated on federal constitutional grounds in state court and maintains that the trial court's

8   failure to make any inquiry into the Public Defender's concern about Repkow's "conduct with

9   other prior clients in our office" specifically grounds the discovery request.   Reply, pp. 1-7.

10  Discovery is sought, avers petitioner, because whether or not Repkow was involved in an

11  inappropriate emotional relationship with another client, which respondent continues to deny, is

12  relevant as it relates to petitioner's uninformed consent in waiving the conflict, and the trial

13  court's failure to inquire as to the Public Defender's representation as to Repkow's "conduct with

14  other prior clients in our office," deprived petitioner of his right to be apprised of the factual

15  basis of his attorney's concerns; the investigative report is very likely to contain the details of her

16  problems with other clients.  Reply, pp. 2-3.

17              Petitioner asserts that he had no opportunity to obtain the information when at the

18  trial court level, as Repkow continued to be his counsel despite his repeated efforts to have her

19  discharged.  Reply, p. 3.  As to his appeal, petitioner asserts that there is no state right to

20  discovery, and that while petitioner has the right to file a state court habeas petition that does not

21  equate to a right to discovery.  Id.  Moreover, absent a court order, the Public Defender's Office

22  refuses to produce the documents at issue.  Id.  Petitioner maintains that he never had a prior

23  opportunity to review the Public Defender's reasons for doubting that Repkow could competently

24  represent him, thus he cannot be held to have failed to have developed an "adequate record for

25  relief" in state court.   Petitioner cites <u>Cargle v. Mullins</u>, 317 F.3d 1196, 1209 (10th Cir. 2003),

26  also cited, inter alia, by respondent, where petitioner was found not to have failed "to develop the

16

1 | factual basis" of his claim in state court, when his request to develop the relevant evidence by

2 | way of discovery and an evidentiary hearing was "summarily refused," after his ineffectiveness

3 | claims were rejected as procedurally defaulted.

4 |    Petitioner contends that respondent's position that petitioner may not raise facts

5 | not presented to the state court would negate all federal habeas discovery, stating that the

6 | applicable standard for Rule 6 discovery is that the district court has discretion to order discovery

7 | "when it would help the court make a reliable determination with respect to the prisoner's

8 | claim."  Herrera v. Collins, 506 U.S. 390, 444, 113 S. Ct. 853 (1993).

9 | Discussion

10 |    The court notes that the context of this discovery dispute is different from the

11 | situation usually presented: a petitioner has filed a state habeas petition where he seeks

12 | discovery/evidentiary hearing to place before the state courts facts outside the record, and these

13 | requests have been rebuffed.  The state has nevertheless often argued in such a situation that the

14 | federal courts are powerless to adduce additional facts because the moment that the court does,

15 | the claim becomes unexhausted on account of facts not having been presented to the state courts.

16 | The undersigned has recognized the *Catch 22* nature of the state's arguments, and has held that

17 | the exhaustion doctrine gives the state courts the *opportunity* to acquire the outside-the-record

18 | facts so that it can adequately assess the claim, and when the state foregoes that opportunity, it

19 | cannot claim that the development of new facts is precluded.   Even when the state has permitted

20 | the petitioner to rely on extra-record facts, the federal habeas statutes and rules recognize that

21 | some additional factual development is appropriate in federal court.  See e.g., 28 U.S.C. § 2246

22 | (permitting further evidence to be acquired and filed), Habeas Corpus Rules ( § 2254) Rule 7

23 | (allowing expansion of the record), § 2254(e)(1) (factual determination of the state courts may be

24 | disproved by clear and convincing evidence), § 2254(e)(2) (allowing an evidentiary hearing if the

25 | petitioner has not "failed to develop the factual basis.")  Clearly, if the federal courts were

26 | restricted to the state record, however it was developed, there would never be a place for

1  expansion of the record, discovery, or an evidentiary hearing.

2         However, this is not the usual case.  In order to be entitled to an evidentiary

3  hearing, and hence the ability to acquire and present extra-record evidence in a federal habeas

4  corpus proceeding, one must have at least *asked* the state courts to develop and adjudicate the

5  extra-record evidence which petitioner now claims is critical to the outcome of the case.

6  "'Diligence require[s] in the usual case that the prisoner, at a minimum, seek an evidentiary

7  hearing in state court in the manner prescribed by state law.'"  Bragg v. Galaza, 242 F.3d 1082,

8  1090 (9th Cir. 2001).  For whatever reason, in the state courts, petitioner believed the error to be

9  able to be corrected by reviewing the record alone on direct review.  Petitioner never asserted,

10 after claiming error, that additional facts were required to be placed before the reviewing court,

11 and ultimately, the state supreme court.  In Bragg, the petitioner there, like the petitioner here,

12 failed to even utilize the state habeas process, and this failure was held to preclude an evidentiary

13 hearing.  Id.  Nor can petitioner bootstrap his claim that the *trial court* erred in not asking for

14 more information into petitioner's assertion that on review before the appellate and state supreme

15 courts he requested that more information be developed.

16        It makes no sense to grant petitioner discovery which can never see the light of

17 day at an evidentiary hearing which cannot be held, and for which mere expansion of the record

18 would be insufficient.

19        Moreover, a petitioner satisfies the exhaustion requirement by providing the

20 highest state court with a full and fair opportunity to consider all claims before presenting them

21 to the federal court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d

22 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021 (1986).  Petitioner has acknowledged that the

23 discovery sought relates to at least one claim that is "potentially" unexhausted, the claim of

24 ineffective assistance of counsel by the Public Defender, which the court finds to be explicitly

25 not exhausted and which lack of exhaustion it is evident that respondent does not intend to

26 waive.  In addition, petitioner's reference to an alleged failure of the trial court to conduct an

1  inquiry also appears to be a claim that is unexhausted.

2        Finally, the discovery sought here is foreclosed by <u>Aiken v. Spalding</u>, 841 F.2d

3  881, 883 (9th Cir. 1988), where new evidence presented by the petitioner in federal court was not

4  available before the state courts at any stage, raising the question of whether or not he had fully

5  exhausted state court remedies.  In <u>Aiken</u>, the Ninth Circuit spoke specifically to the occasion

6  when, as here, a petitioner brings a federal habeas petition, without having filed a state court

7  habeas petition:

8          [Where] a federal habeas petitioner presents newly discovered
        evidence or other evidence not before the state courts such as to
9          place the case in a significantly different and stronger evidentiary
        posture than it was when the state courts considered it, the state
10          courts must be given an opportunity to consider the evidence.

11  Petitioner here, at the very least, also seeks to "substantially improve the evidentiary basis" for

12  his claims, "thereby presenting the very type of evidence which the state court should consider in

13  the first instance."  <u>Id</u>.  However, in doing so, not only has petitioner failed to demonstrate that

14  all claims to which the discovery relates have each been presented to the state courts, but to the

15  extent any such claims have been exhausted, the discovery sought would have the effect of

16  rendering such claims significantly different from those presented to the state courts, and thus,

17  unexhausted.  The court finds that petitioner has not shown good cause for the discovery he

18  seeks.

19        Accordingly, IT IS ORDERED that petitioner's November 2, 2006, motion for

20  discovery is denied.

21  DATED: 9/12/07               /s/ Gregory G. Hollows

22                             GREGORY G. HOLLOWS
                           UNITED STATES MAGISTRATE JUDGE

23

24  GGH:009
brew0382.dsc

25

26