IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD ANTHONY BREWER,

           Petitioner,                No. CIV S-06-0382 GEB GGH P

     vs.

D. L. RUNNELS, Warden, et al.,        ORDER

           Respondents.

_____/

I.  Introduction

          Petitioner, proceeding with appointed counsel, has filed a petition pursuant to 28 U.S.C. §2254.[1]  Petitioner was convicted by a jury in Sacramento County Superior Court, on August 31, 2001, of first degree murder with the special circumstance of having been committed while engaged in a robbery; found to have personally used a firearm; found guilty of attempted robbery with use of a firearm, conspiracy to commit robbery, assault with a deadly weapon, two counts of armed robbery and possession of a firearm by a convicted felon.  First Amended Petition (FAP), pp. 1-2, FAP Points and Authorities (P&A), pp. 3-4; Answer (Ans.), p. 5, respondent's Lodged Document (Lod. Doc.) 1, Third Appellate District Court (3rd DCA) Opinion

---

[1] This matter now proceeds on a first amended petition, filed on December 12, 2007.

1  (Op)., filed on February 8, 2005.  Judgment was entered, and a sentence of life without

2  possibility of parole plus 25 years was imposed, on October 25, 2001.  Id.  Petitioner has

3  expressly abandoned claim 1, wherein trial court error, in violation of petitioner's Sixth

4  Amendment right, had been alleged when the court initially refused to release the public

5  defender's office based on a conflict of interest, and claim 3, wherein trial court error had been

6  claimed when petitioner's repeated Marsden motions were denied; petitioner has also abandoned

7  claims 4, 5, 6, 7, 8, and 9 of the original petition (filed on February 23, 2006), electing to proceed

8  on one ground only: claim 2, that the waiver of the conflict as well as the appointment of new

9  counsel was a due process violation because petitioner was excluded from crucial hearings and

10  the trial court failed to disclose to petitioner essential facts disclosed in those hearings.  FAP, pp.

11  3-6.  In his traverse, petitioner back-pedals to attempt to re-embrace a Sixth Amendment

12  violation, which will be addressed below, as respondent did file a reply to this new position.

13  Traverse, p. 4; Sealed Reply (or Sur-reply), pp. 5-7.

14  II.  AEDPA

15       The AEDPA "worked substantial changes to the law of habeas corpus,"

16  establishing more deferential standards of review to be used by a federal habeas court in

17  assessing a state court's adjudication of a criminal defendant's claims of constitutional error.

18  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

19       In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

20  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

21  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

22  between "contrary to" clearly established law as enunciated by the Supreme Court, and an

23  "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

24  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

25  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

26  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state

1   court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir.

2   2003).

3   III.  <u>Issues</u>

4          Characterizing the basic issue here is difficult in that the alleged error involves an

5   inextricable blending of petitioner's absence from proceedings in which an actual or potential

6   conflict of counsel was discussed, possible errant advice from his attorney regarding a conflict,

7   and a decision by petitioner to waive a potential conflict of counsel on less than a full disclosure

8   of facts.

9          In a sentence, the backdrop of the issues here revolve about trial counsel's

10  unethical conduct with another unrelated defendant, and the possible effect in petitioner's case of

11  pending disciplinary proceedings against her along with the potential effect of embarrassing

12  publicity, and petitioner's absence from an in camera hearing in which the issues were discussed.

13  A violation of ethics law for counsel does not create an actual conflict *per se*.  <u>See</u> <u>United States</u>

14  <u>v. Nickerson</u>, 556 F.3d 1014, 1019 (9th Cir. 2009).  However, in certain circumstances, an actual

15  conflict could arise, and petitioner had to make a choice at this time of whether to continue with

16  his counsel or accept another appointed counsel.  In making this choice, petitioner had to be

17  sufficiently informed about the nature of counsel's wrongdoing, *either* by counsel or the court.

18         The crux of the problem here initially involves intelligent waiver of the potential

19  conflict, and that determination involves the totality of whether counsel effectively advised

20  petitioner about the nature of the potential conflict, the prejudice suffered from not being

21  permitted to attend a hearing where a fuller discussion of the ethical problem took place, and the

22  discussion by the judge in open court about the nature of the conflict along with his inquiry to

23  petitioner of whether petitioner desired to waive the conflict.

24         If the waiver of any conflict was valid, the petition should be denied as petitioner

25  has abandoned any subsequent issues, related or not, to the issue of conflict of counsel.  If the

26  waiver is found not to be valid, it is not "game over" for respondent; the law requires a

determination to then be made whether the potential conflict advanced to an actual conflict which caused an "adverse effect" on counsel's performance, and if not, whether petitioner suffered Strickland[2] prejudice as a result of any lingering potential conflict.  See Belmontes v. Brown, 414 F.3d 1094, 1118 (9th Cir. 2005), *rvs'd on other grounds*, Ayers v. Belmontes, 549 U.S. 7, 127 S.Ct. 469 (2006); Lewis v. Mayle, 391 F.3d 996, 997 (9th Cir. 2004), in which both cases found a conflict waiver invalid and then went on to determine whether the effect of the conflict warranted reversal.

After an exhaustive presentation of the facts, the undersigned will first discuss whether, aside from any advice counsel may have given her client about the nature of the conflict, the record allows a finding that petitioner was sufficiently informed such that he could validly waive any conflict.  If the record does not permit such a finding, the court will determine whether an evidentiary hearing is permitted to ascertain what *specifically* counsel told her client about the nature of the conflict.  These facts, could, depending on their specificity, make up for any deficiencies in the on-the-record explanations to petitioner.

Assuming for the moment, that the undersigned ultimately finds a non-intelligent waiver, the effect of that deficiency would have to later be assessed viewing the case as a whole, either on the "adverse effect" standard, or Strickland prejudice.

IV.  Factual Background

The Third District Court of Appeal in an unpublished opinion, noted that the trial, involving four defendants, four defense counsel, two prosecutors and three juries, "was long and complicated."  People v. Brewer, 2005 WL 290021 *1 (Cal. App.3rd 2005); see also, Lod. Doc. 1.  The "facts of the crimes," are not presently at issue in this order.  Suffice it to say here that the case involved serial robberies of the Bread Store by multiple assailants.  Brewer was involved in both robberies, and the last robbery resulted in the murder of a Bread Store

---

[2] Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984).

1    employee.

2    Petitioner's Claims

3               Claims 1 and 3 through 9 from the original petition, as noted, have been expressly

4    abandoned in the first amended petition.  FAP, pp. 3-4, 6; FAP P&A, p. 1.[3]  As to the remaining

5    claim, petitioner asserts, citing Holloway v. Arkansas, 435 U.S. 475, 484, 98 S. Ct. 1173, 1178-

6    1179 (1978), that the failure of the trial court to appoint separate counsel or to inquire sufficiently

7    into his defense counsel's potential conflict of interest amounted to a violation of his Sixth

8    Amendment rights.  FAP, p. 33.  In Holloway, the trial judge had refused to appoint separate

9    counsel for two of three co-defendants after counsel appointed to represent all three of them

10   made a timely motion for separate appointments based on possible conflicts of interest arising

11   from confidential information the codefendants had shared with him.  The High Court

12   determined that the jointly represented defendants were deprived of their right to assistance of

13   counsel when the trial judge "failed either to appoint separate counsel or to take adequate steps to

14   ascertain whether the risk was too remote to warrant separate counsel."  Holloway, supra, at 484,

15   98 S. Ct. at 1178-79.  However, petitioner herein nevertheless initially contended that he does not

16   make any argument based on the Sixth Amendment because in order to prevail on such a claim it

17   would be necessary for petitioner to demonstrate that the conflict adversely affected his defense

18   counsel's performance and while "Repkow's performance was affected in regards to her

19   relationship to her client...." as evidenced by the multiple Marsden[4] motions, the prejudice

20   standard for a conflict issue relates to how the trial legal issues were actually handled and

21   petitioner conceded "that an adequate showing of this type of 'adverse effect' cannot not be made

22   in this case."  FAP, pp. 33-34;  Mickens v. Taylor, 535 U.S. 162, 174, 122 S. Ct. 1237, 1245

23

24               [3] Only the court's electronic pagination on the briefing is referenced.

25               [4] In People v. Marsden, 2 Cal. 3d 118, 84 Cal. Rptr. 156, 465 P.2d 44 (1970), the
     California Supreme Court held that a trial court must permit a defendant seeking a substitution of
26   counsel after the commencement of the prosecution's case to specify the reasons for his request.

1  (2002) (where trial court fails to inquire into a potential conflict of interest about which it knew

2  or reasonably should have known, petitioner has the burden "to establish that the conflict of

3  interest adversely affected his counsel's performance" in order to show a Sixth Amendment

4  violation); Campbell v. Rice (Campbell II), 408 F.3d 1166, 1170-71 (9th Cir. 2005) (en banc) (no

5  relief from Sixth Amendment violation unless defendant can demonstrate counsel's

6  "performance was 'adversely affected' by the conflict of interest").[5]  Thus, as articulated in his

7  first amended petition, petitioner's claim rests on an assertion of a Fourteenth Amendment due

8  process violation by the trial court "in absenting Brewer from a crucial proceeding," as well as

9  allegedly subsequently failing to fully disclose the facts divulged at that proceeding.  FAP, pp. 34

10  - 44.  Notwithstanding, in his traverse while remaining focused on a claim of a due process

11  violation, petitioner expressly withdraws his previous analysis predicated on Campbell II, as well

12  as withdrawing his prior withdrawal of any Sixth Amendment argument.  Traverse, p. 7.

13  Eschewing his prior express averment that the requisite prejudice for a Sixth Amendment

14  violation could not be shown, petitioner asserts in the traverse that "[t]he key issue here is

15  prejudice" for which he maintains that the "controlling authority" is Bradley v. Henry, 510 F.3d

16  1093 (9th Cir. 2007) (en banc), contending that the prejudice analysis therein is what he relies on

17

18

19  [5] In the earliest incarnation of Campbell v. Rice , 265 F.3d 878 (9th Cir. 2001),
subsequently withdrawn and superseded, a Ninth Circuit panel concluded that the failure of the
trial court, on notice of a potential conflict of interest, in not conducting an appropriate inquiry,
resulted in a constitutional violation that amounted to structural error, requiring reversal of the
conviction.  Petitioner embraces the superseding decision of Campbell v. Rice (denominated by
petitioner as Campbell I), 302 F.3d 892, 899-900 (9th Cir. 2002), wherein the same panel
revisited the original decision following the Supreme Court's ruling in Mickens, supra, 535 U.S.
162, 122 S. Ct. 1237 (2002), this time affirming the district court's denial of petitioner's conflict
of interest claim (based on petitioner's not having shown that the conflict adversely affected her
performance), but holding that petitioner's due process rights were violated due to his exclusion
from an in-chambers hearing during which his counsel's potential conflict of interest was
discussed, finding this to be structural error and reversing the district court's denial of the habeas
petition on that ground.  The en banc decision which followed, cited above, ultimately affirmed
the district court's denial of the petition in its entirety, a holding with which petitioner herein
vehemently takes issue, while conceding that the decision is binding on this court.  FAP, pp. 43-
44.

at this point.[6]   On February 29, 2008, the following order in <u>Bradley v. Henry</u>, cited as 518 F.3d

657, issued, stating in relevant part: "The plurality opinion has been joined by only five of the

eleven judges on this limited en banc panel.  Because that constitutes less than a majority of the

panel, that opinion does not announce the law of this circuit.  The precedential effect of this

decision does not extend beyond the conclusions expressed in this separate opinion [referencing

the decision at 510 F.3d 1093], which concurs in the judgment on more narrow grounds.

[Citation omitted]."  To the extent that petitioner makes an argument in his traverse based on the

Sixth Amendment – despite having expressly previously avowed that the requisite prejudice to

support a claim of ineffective assistance of counsel under the Sixth Amendment could not be

shown as to the actual handling of the legal issues at trial – rather than limiting his claim to a

Fourteenth Amendment due process as set forth in the amended petition, the court will include

that discussion, if necessary in Claim 2.  Petitioner's unorthodox, back and forth briefing, has

unnecessarily complicated this matter.[7]  The remaining claim as articulated in the first amended

petition is addressed immediately below.

Claim 2 -         <u>Waiver of conflict as well as of appointment of new counsel amounted to a due</u>
                  <u>process violation due to petitioner's exclusion from crucial hearings and the trial</u>
                  <u>court's failure to disclose to petitioner essential facts disclosed in those hearings</u>

<u>Background re: Petitioner's Representation</u>

          The facts concerning this claim, which would test any trial judge, must be initially

fully stated, and then broken out in order to fully understand the claim.  The 3rd DCA sets forth

the following background "facts concerning Brewer's representation:"

---

     [6] The Ninth Circuit's en banc decision in <u>Bradley v. Henry</u>, 510 F.3d 1093 (9th Cir. 2007),
was filed a week after petitioner filed the first amended petition (FAP) herein.  Petitioner in
Footnote 4 of the FAP, referenced a case he noted to be "previously citable as <u>Bradley v. Henry</u>,
428 F.3d 811 (9th Cir. 2005)," in which he indicated at the time of the filing of the instant
amended petition, on December 12, 2007, was scheduled for en banc review.  The en banc
decision was filed on December 19, 2007.

     [7] As noted previously, respondent did file a sealed reply or, as it were, a sur-reply,
addressing the matter.

The public defender's office was appointed to represent Brewer on January 16, 1997.  Brewer was represented by assistant Public Defender Karol Repkow, a 22-year veteran of the Public Defender's Office. Trial began November 1, 2000. The first weeks were taken up with pre-trial motions, then jury selection for three juries. Opening statements were presented to Brewer's jury and the first witness was called on March 20, 2001 (trial day 46). The court excused the jury until Monday, April 2.

On March 29, 2001, Repkow approached all counsel and told them she needed to speak to the court ex parte; there was no objection. Repkow asked the court for a one-week continuance until April 9. She was involved in a situation involving her employment that was taking substantially all of her time. The next day, Friday, the trial court held a hearing. Repkow did not attend due to "the personal issue," but her supervisor, Don Manning, attended. Manning told the court he believed that with a one-week continuance Repkow would be able to represent Brewer the remainder of the trial. The prosecutor's only concern was what had been disclosed to Brewer and his attitude about the matter. The court envisioned a two-part process: the first step was the continuance, then a further hearing with Repkow and Brewer so "that everyone is on the same page." The court granted the continuance without objection.

That afternoon the court had a conversation with Paulino Duran, the public defender, about whether there would be any further disruptions in this case relative to this situation. Duran assured the court that to his knowledge there would be none.

The following Monday, April 2, Manning appeared with Repkow and stated the public defender's office was declaring a legal conflict. Two defense counsel who represented another client who may have been involved in the potential conflict were present. They were concerned with protecting their client's privileges. A hearing was held in the afternoon.

Manning stated that based on a reevaluation of the case and subsequent matters, the public defender's office believed it was best to ask to be relieved because they did not believe Brewer could get effective assistance of counsel if the office remained in the case. The evaluation was based on facts surrounding Repkow's representation and other factors in her life. Manning was not prepared to discuss those further unless the court asked for an camera hearing.

The court indicated it needed a better idea of the nature of the conflict. Repkow stated her primary concern was what was best for Brewer and he wanted her to continue to represent him. She believed she was ready and able to do that. She suggested the conflict was between her office and herself and was not a legal conflict that touched on Brewer. Manning asserted that Repkow

9

was not in a position to raise the issue of conflict because the public defender was the attorney of record and the public defender believed Repkow could not provide effective assistance of counsel. Additionally, Manning advised the court that Repkow intended to request an additional one-week continuance.

The court granted an in camera hearing; present were two representatives from the public defender's office, Manning and Mr. Loehr, Repkow, and Brewer. The court indicated the situation did not permit simply allowing the Public Defender's Office to make the call because Brewer had certain rights to continue representation by Repkow.  Presumably, the trial court was referring to *Harris v. Superior Court* (1977) 19 Cal.3d 786. Under *Harris*, a trial court exercising its discretion in the appointment of counsel should take into consideration whether defendant has a preexisting relationship with an attorney willing to accept appointment. ( *Id*. at p. 799.) But even in such circumstances, the court need not appoint that attorney when there are "countervailing considerations of comparative weight." ( *Ibid*.)

Manning discussed what precipitated the withdrawal motion. He reported that after the request for the continuance the previous Thursday, Repkow was to meet with Duran, but she was so distraught she was unable to, nor was she able to attend court on Friday. The public defender's office questioned Repkow's judgment regarding her conduct with another client. They could not guarantee the court Repkow might not have an emotional collapse in the future; they could not certify that Repkow could adequately and effectively assist Brewer. Loehr added that the facts revealed "a failure to exercise good legal judgment, failure to understand [her] role as counsel and perhaps a failure to be able to focus and to do the work in this matter that is required because of other concerns." There was also a concern that personnel matters would be preceding [sic] simultaneously with the case and a high likelihood of adverse publicity shortly. There had been serious lapses of judgment involving her contact with a prior client as to whom the Public Defender's Office had declared a legal conflict. Repkow took the position these matters did not effect [sic] Brewer. The court confirmed with Brewer that he wanted Repkow to continue to represent him.  Manning declared Brewer could not waive the issue of effective assistance of counsel.

The discussion turned to the timing of the personnel issues facing Repkow. Manning told the court that he was investigating the matter and would have a report to Duran in 30 days. Any further action would be taken in less than six months, while the trial was going on.  Manning stated the previous one-week delay was due to the impact of Repkow understanding the office was initiating an action against her; the personnel matter would not be resolved in a week, but before this trial was over.

Manning set forth his office's position of the issue of effective assistance of counsel: "It is our belief based on internal personnel matters, matters that have come to our attention through information that has been provided to us by the Sheriff's Department, information that has been presented to Ms. Repkow in the form of a letter by Mr. Duran, her conduct last week and on Friday, her conduct with a prior client, her conduct with other prior clients in our office, that we believe that if that hits the public during this trial that we cannot guarantee this Court that Ms. Repkow will be able to assist effectively in insuring that Mr. Brewer has the proper right to counsel." Manning indicated Repkow was concerned about termination from the office and public disclosure of the events that led to the investigation.

Repkow protested she felt the Public Defender's Office was pressuring her to change her position by threatening to fire her within 30 days. The court remarked the only thing that sounded new from the previous week was that this matter might become public.

The trial court determined more information on the personnel matter was necessary, so Brewer was removed from the hearing. Manning explained that in January the public defender's office had to declare a conflict as to a client and Repkow was ordered to have no contact with that client. In early March, law enforcement advised them that Repkow had continuing contact with that client and law enforcement was revoking her privilege to use the attorney-client room.  Repkow had also received calls from the client at both her home and office.  And Repkow had been passing contraband to the client and violating rules of the sheriff's department concerning social visits, contraband, and using other inmates to communicate with the client.  Duran directed her in writing not to have any additional contact with the client, and the previous Friday Repkow disregarded that order and received a phone call from that client. The public defender's office then reassessed Repkow's judgment and how the circumstances of her contact with the client, the pending personnel matter, and other things would weigh on her ability to represent Brewer. The conclusion was the office could not assure the court of adequate representation.  Loehr added there was some question whether Repkow properly understood the role of counsel.

Repkow reiterated that any mistakes she had made had no bearing on Brewer and she believed she could adequately represent him. The court adjourned the hearing until the next day.

The next day, to refute any claim of ineffective assistance of counsel, Repkow recounted all the work she had done on this case. She then proposed that she would resign from the public defender's office and ask the court to appoint her to represent Brewer.

The court found there was no current conflict of interest, though there was a secondary issue of a potential conflict of interest. The court had not found any ineffective assistance on the part of Repkow so far in the trial. The court then questioned Brewer. Brewer said he did not understand most of what had been discussed, but he wanted Repkow to represent him. The court then explained that the public defender's office wanted to be relieved because it believed Repkow could not effectively represent him. There were issues involving her employment that might distract her and affect her ability to be focused on this case; her attention could be divided. As a result, it might increase his chance of being convicted. Brewer was given the opportunity to discuss the potential conflict with an attorney from the indigent defense panel but declined. Brewer stated he had discussed the matter with Repkow and was comfortable with his decision to retain her.

The court found Brewer had been advised of the right to be represented by conflict-free counsel and understood the disadvantages of being represented by an attorney with a potential conflict. He had discussed the matter with his attorney and was aware of the possible consequences. The court found Brewer waived any potential conflict, stressing that the conflict was only potential.

Repkow requested a week's continuance as she needed to move her office. The request was granted. Repkow resigned from the public defender's office. The public defender requested a five-month continuance for a new lawyer to take over the case. Repkow requested she be appointed Brewer's counsel. Brewer indicated he wanted Repkow to represent him. The trial court relieved the public defender's office as counsel and appointed Repkow to represent Brewer.

Beginning two months later, Brewer made a series of *Marsden* (*People v. Marsden* (1970) 3 Cal.3d 118) motions. At one point he sought to represent himself. (See *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562].) Brewer and Repkow also complained that Repkow was denied pass-through privileges in the attorney-client area of the jail and the lack of privacy made communication on Brewer's defense extremely difficult. All of these motions were denied as the court found Repkow provided effective assistance of counsel.

<u>Brewer</u>, <u>supra</u>, 2005 WL 290021 *5-8; Lod. Doc. 1, pp. 10-17.

Petitioner contends that in obtaining the waiver from petitioner, the court did not disclose to him:

(1) Repkow had a personal relationship with another client, (2) was

12

1    barred from using the attorney-client room (pass through window),
2    (3) that her telephone calls were being intercepted, or (4) that the
     Public Defender's office had serious doubts about her competency
3    based upon other matters that they had reviewed.

4   FAP P&A, p. 24, citing RT 2202-2206.

5          This court herein unseals the transcript of the in camera hearing [8], identified as

6   respondent's Lod. Doc. 9, which the court had provisionally sealed by <u>Order</u>, filed on March 6,

7   2009 (#58).  The court finds this state court transcript is no longer entitled to privacy protection

8   because the public interest far outweighs any interest in the maintenance of privacy at this point.

9   In addition, the Third District Court of Appeal in rendering its decision on direct review, partially

10  excerpted above, summarizes the closed hearing, including the portion from which petitioner was

11  excluded, and while the decision is not officially published, public access to it is by no means

12  foreclosed.  Moreover, the personnel matter eluded to therein, specifically (at least in the portion

13  of the hearing from which petitioner was excluded), the unfortunate entanglement of petitioner's

14  trial counsel with another inmate, received wide public exposure in the news media long ago and

15  was treated with more delicacy at the in camera hearing than presumably in the press.  The

16  undersigned finds that in the circumstances, under <u>Pintos v. Pacific Creditors Assn.</u>, 565 F.3d

17  1106, 1115 (9th Cir. 2009), "compelling reasons" to maintain the seal on this judicial record have

18  not been presented and no longer exist.

19         These issues arose in a case involving four co-defendants (and multiple juries)

20  during the sixth months of trial.  RT 2151-2152.  Repkow asked for the in camera hearing to be

21  comprised of the court, herself and petitioner.  RT 2152.  The trial judge ordered the in camera

22  hearing among himself, Ms. Repkow, petitioner, as well as Mr. Manning and Mr. Loehr of the

23  Office of the Public Defender, including "necessary court staff."  RT 2152-2153; sealed RT

24

25         [8] The undersigned uses "in camera" to denote that the other defendants and their counsel
    were not present.  As discussed herein, the pertinent "in camera" hearing was the one at which
26  petitioner Brewer was not permitted to attend.

13

1   2154-2196 (Docket # 59) (unsealed herein).

2         At first, Ms. Repkow objected to Mr. Manning's and Mr. Loehr's presence as

3   adverse to herself and thus, to her client, and just wanted the judge, herself and petitioner at the

4   hearing. RT 2154.   But the judge noted it was the Office of the Public Defender (OPD) which

5   was petitioner's appointed counsel and that the assignment to a particular attorney occurred

6   within the office, so as petitioner's counsel, the OPD could be heard.  RT 2154-55.  The judge

7   observed that petitioner was "in the middle" of any conflict between the OPD and Repkow, and

8   that in order to make a waiver if that should come up, petitioner needed to be present to "know

9   all the dynamics that are involved in this particular case."  RT 2155.  Although Ms. Repkow

10  continued to object to the OPD arguing against her in front of petitioner, the judge asked how

11  petitioner could "make an informed decision without having all of the facts available to him[.]"

12  RT 2156.   The judge also referred both to his need and that of petitioner to hear about the

13  conflict issue "if it's this bad now."  RT 2157.   Ms. Repkow said the following about what she

14  had previously shared with petitioner:

15      "*I have indicated to Mr. Brewer generally the nature of my
    position* with respect to the office and that some matters have

16  arisen that actually concern, as an example, or may concern a
    former client.  The conflict in my view had nothing to do with Mr.

17  Brewer.  I think I've already said that and doesn't have a bearing
    on my representation of him.

18

19  Mr. Brewer is aware that, obviously he can see there's a conflict
    here in my own office, and that much I did represent to him.  And

20  as I've already indicated to the Court, Mr. Brewer states that he
    wants to continue with me as his attorney, what he understands that

21  some matters have arisen in my office, matters that concern me,
    matters that concern other individuals and other issues that have

22  taken my focus away recently within the last few days from his
    case, which is why I asked for an additional week."

23   RT 2157-58. (Emphasis added)

24  Her focus at that point was on the unnamed former client and she wanted to make sure counsel

25  for that client be included if Mr. Manning and Mr. Loehr intended to discuss that former client.

26  RT 2158.  Petitioner was present for a discussion of how Repkow had been unable to

communicate with the public defender, Paulino Duran, and that Manning had come to court on Friday for Repkow because she was so distraught and there was a personnel issue that was in the investigation phase.  RT 2159.

> Mr. Manning: "We currently question her judgment based on the issues that are involved in the personnel matter.  We question her judgment regarding her conduct with another client in our office.  And after a full and thorough discussion of whether or not we believe that she could provide effective assistance of counsel to Mr. Brewer, it was our judgment that she could not.  And that's why we have requested our office to be relieved."  RT 2159-60.

> We cannot guarantee to the Court that two weeks from now, three weeks from now she is not going to have an emotional collapse, and I don't think the Court wants to be in that situation three to four weeks from now.  She's had this case for four years, and her emotional state last week was such that she requested the Court to continue it a week, and this morning wanted the Court to continue it an additional week.

> We cannot certify that Ms. Repkow can adequately and effectively assist Mr. Brewer."  RT 2160.

> Mr. Loehr: "[W]e have a responsibility as an office to make sure that Mr. Brewer's Sixth Amendment rights to counsel are protected.  And Mr. Duran has, as Mr. Manning said, serious concerns about Ms. Repkow's legal judgment at this time as demonstrated in these matters involving another client, matters which have happened very recently.

> And when we see her coming before this Court on a serious matter, I think the office cannot stand back at a time when we have such questions about the judgment of a lawyer and let that lawyer proceed to try such a serious and difficult case... [T]he matters that have been related to me tend to show a failure to exercise good legal judgment, failure to understand role [sic] as counsel and perhaps a failure to be able to focus and to do the work in this matter that is required because of these other concerns.

> So there is the concern about the judgment.  There's also the concern that other matters may be preceding [sic] simultaneously with this case, other personnel matters - -" RT 2161.
> ....

> There's also a high likelihood of some adverse publicity shortly.  Things seem to have become public in a way that was not anticipated.  And we don't know what's going to happen, frankly.  And it could be something that would have a serious impact, on Ms. Repkow personally and on this trial.  RT 2161.

1          Mr. Loehr referred to "a significant lapse in judgment" by Ms. Repkow with

2   regard to a former client who had been represented by Repkow in which the OPD, a month prior,

3   had had to declare a legal conflict (the unidentified person subsequently represented by Mr.

4   Clymo and Mr. Millard).  RT 2162-63.  Mr. Loehr stated that "under Rule 3-310, matters relating

5   to former clients that would substantially affect a current representation do form the basis for a

6   legal conflict," but he asserted that the more important concern was the Sixth Amendment duty

7   to ascertain what the conflict is and to always be prepared to provide the client with vigorous and

8   adequate representation.  RT 2163.

9          Ms. Repkow then defended herself by asserting that any matters affecting a former

10  client or any error of judgment on her part with regard to any such person had nothing to do with

11  petitioner and that there was no question of her professional relationship with petitioner.  RT

12  2164.  She claimed that what had recently affected her concentration on petitioner's trial had

13  been discussions of issues in her office and that petitioner would be best represented by her.  RT

14  2164.  She conceded that she was distraught and had been crying on the previous Friday, but that

15  she regarded her crying, which she said was rare for her, as healthy in the circumstances.  RT

16  2164-65.  She stated she was under even more pressure at the then-current point and was not

17  crying and reiterated that petitioner would be served best if she continued to represent him.  RT

18  2165.

19         The judge ascertained that petitioner had heard everything up to that point and still

20  wanted Repkow to represent him.  RT 2165-66.  Mr. Manning interjected that he did not believe

21  that petitioner could waive the issue.  RT 2166.  A discussion ensued wherein it was made clear

22  that an investigation would continue into Ms. Repkow's conduct and that any action by the

23  public defender as to Ms. Repkow's future employment in that office would be concluded before

24  the trial ended.  RT 2166-2170.

25         When asked by the court, still in petitioner's presence, whether or not it was the

26  position of the public defender's office (OPD) that Ms. Repkow would not be able to provide

1    constitutionally adequate representation of counsel based on information the office had received,

2    RT 2170-71, Mr. Manning responded:

3          It is our belief based on internal personnel matters, matters that
have come to our attention through information that has been
4          provided to us by the Sheriff's Department, information that has
been presented to Ms. Repkow in the form of a letter by Mr.
5          Duran, her conduct last week and on Friday, her conduct with a
prior client, her conduct with other prior clients in our office, that
6          we believe that if that hits the public during this trial that we
cannot guarantee this Court that Ms. Repkow will be able to assist
7          effectively in insuring that Mr. Brewer has the proper right to
counsel.
8

9          The Court: That clarifies a lot.
Now, just so I understand, assume for the sake of argument that no
information gets out to the public and that there's no further
10          personnel actions, and Ms. Repkow is left to simply work on this
one case and defend Mr. Brewer to the best of her ability at this
11          time, would you still have the same position on behalf of the
office?
12

13          Mr. Manning: The personnel action will proceed.  What the final
result of that personnel action, I'm not Mr. Duran.  So until I
14          present the investigative report to him, I don't know what that final
personnel action will be.

15          I will say that based on my review and evaluation of this case,
some of the matters that are - - Ms. Repkow is concerned about is
16          [sic] termination from our office is public disclosure of the events
that led up to this investigation, and it's our belief that that being
17          on her mind and her poor judgment on prior cases in our office,
that we cannot certify to this Court that she can properly and
18          effectively provide the assistance that is necessary in the defense of
a case of this nature.  And that the personnel action in this case was
19          contemplated to be finished long before six months.

20    RT 2171-2172.

21          At that point, Ms. Repkow interjected that the office was stating this position for

22    the first time and that all of the information was known to them as of the afternoon of Friday

23    before when it was represented to the court that she could continue to represent petitioner.  RT

24    2172.  She also remarked that as of Friday afternoon she was not being told she could be fired in

25    30 days, but she acknowledged that that was "a fear at the back of my mind." RT 2172-73.  The

26    trial judge then attempted to discern what could have happened between 2:00 p.m. on the

previous Friday [March 30, 2001] and 10:00 a.m. on that next Monday [April 2, 2001] that caused the OPD to question Ms. Repkow's competence, stating that "it appears that the one thing that I hear that's new is that this may get out and become public." RT 2173.[9]

> The Court: And Friday at 2:00 o'clock you were competent to handle the case. What I'm trying to find out is what happened between Friday at 2:00 and this morning at 10:00 that caused you not to be competent to handle the case. And the only thing that's new information that I hear is that it may become public, and as a result of it becoming public, it may cause tremendous stress upon not only the office, but you personally, Ms. Repkow.
>
> And further important now, I also understand there's a misunderstanding regarding length of trial, so there could be a personnel action prior to this trial which would create another whole issue.

RT 2174.

Ms. Repkow acknowledged that she had been "worried about a personnel action" since receiving a "directive a couple of weeks ago." RT 2174. But she continued to protest that although she was worried about being fired that as of Friday afternoon she understood that she was "okay to proceed on this trial...." RT 2174. Mr. Manning clarified that he did not speak for Mr. Duran regarding the resolution of the personnel matter but that the matter would not rest for six months [his newly understood time frame for the length of the trial]. RT 2175. He also stated that "this should not come as a shock to Ms. Repkow because during her improper contact with a prior client of ours that was discussed numerous times the fact of termination being a possibility of this contact." RT 2175. Petitioner was present for this entire discussion up to the point when the trial judge asked if there were any other issues to be brought up. In what set up

---

[9] Following an in camera hearing (RT 2120-2125), Mr. Manning on the record in open court, on Friday, March 30, 2001, had requested a one-week continuance, "based on the personal problems that Ms. Repkow is having,... so that she can be prepared to represent Mr. Brewer when this trial starts with the first witness." RT 2126. The continuance, until April 9, 2001, was granted although Mr. Manning assured the court that Ms. Repkow would be present on April 2, 2001, for the hearing on a motion filed by another counsel and for "other miscellaneous matters...." RT 2127.

1   the issue in Claim 2 Mr. Manning responded:

2           The only thing I would say to the Court is that I believe within the
        parameters of discussing this issue and providing privacy to Ms.
3       Repkow concerning these personnel matters, I have not disclosed
        in exact detail what the issues are in our office.  And I believe it
4       would be inappropriate to discuss those issues especially with Mr.
        Brewer present since they are personnel issues.
5   RT 2176.

6           Mr. Loehr also requested a hearing in petitioner's absence if the court wanted

7   more detail.  RT 2176.  Mr. Manning later reinforced the request: "And as I indicated to the

8   Court, if the Court desires additional information we are ready to provide that information to the

9   Court as long as Mr. Brewer is removed from the hearing."  RT 2181.  Mr. Loehr had also earlier

10  expressed that they were "to some extent...speaking in generalities...," in addition to their

11  concern for Ms. Repkow's "privacy interests" in the pending "personnel actions," they also were

12  concerned about guarding the privacy of the former client, stating "[t]here are matters that are

13  private with respect to that client that Mr. Brewer perhaps should not be privy to."  RT 2160.

14  Ms. Repkow continued to argue for her competence to represent the petitioner; she also averred

15  that raising "a possible reason as to why there could be problems in the future....doesn't have any

16  bearing on my competence to adequately and fairly represent..." petitioner.  RT 2182.

17          After petitioner was removed for the court to be provided with greater detail, Ms.

18  Repkow again alert, perhaps over-alert, to the interests of the former client, immediately asked

19  on behalf of Mr. Millard and Mr. Clymo whether they could be present to protect their client's

20  interests as he was the one involved in the personnel action, which request was denied with the

21  judge expressing no interest in hearing the name of anyone involved.  RT 2184.

22          Mr. Manning proceeded to provide more specific information, beginning with

23  informing the judge that in January of that year, the OPD had to declare a conflict with a client

24  represented by Ms. Repkow, at which point she had been directed by Paulino Duran to have no

25  more contact with that client.  RT 2184.  After the first or second week in March, according to

26  Manning, the OPD was informed by law enforcement that:

> Ms. Repkow had had continuing contact with that client to include the attorney-client room when she no longer represented the client and they were informing us at that date they were revoking any privilege she might have to use the attorney-client room at that time.

RT 2184.

Without characterizing the phone calls other than to indicate they were of a "nonlegal nature," Manning stated that the office was provided with information that phone calls between the former client and Ms. Repkow continued with calls made both to her home and office.  RT 2184.   The OPD also learned that Ms. Repkow passed contraband to the former client as well as violated the rules of the sheriff's department by using the attorney-client room for social visits with the former client.  RT 2185.  In addition, Manning said, Repkow was using other former clients and inmates to communicate with the subject (but unidentified) former client when he could not communicate with her.  RT 2185.  When Duran directed her in writing to have no further contact with that client, Repkow nevertheless on the prior Friday received a phone call from that person, about which she did inform the office.  RT 2185.  Thus, because she had disregarded Duran's direction and after discussions with other office attorneys, the OPD re-assessed their evaluation of Repkow's judgment, the situation with the former client and also considered how the personnel matter and other issues would impact her, concluding that they could not assure the court that Ms. Repkow could adequately represent petitioner throughout the trial.  RT 2185-2186.

Manning clarified that the initial conflict arose from Repkow's passing contraband to jail clients and also from an allegation by a client as to a relationship with Repkow, which relationship did not involve petitioner.  RT 2186.   Mr. Loehr expressed regret about the circumstances, remarking on Ms. Repkow's dedication to her clients but indicating that the events of the prior months had caused Duran and Manning justifiably to question whether Repkow could perceive accurately her role in representing clients.  RT 2186.  Mr. Loehr continued:

1
2
3

> And there are allegations of not understanding that, of stepping over those bounds significantly, perhaps out of a sense of duty to these clients. If you don't understand that role as a lawyer, you don't stand before the Court in the proper posture to provide the effective assistance of counsel.

4
5
6
7

> So it's not really there's a personnel action possibly pending. Who knows what's going to happen there? That certainly would weigh on anybody's mind. But as much for Ms. Repkow, we ask the Court to look at this and say is she right now able to properly understand her role as counselor? Is there evidence that very recently she has not understood that role correctly? Is she in a position to make an assessment of what is proper for her and Mr. Brewer? I would argue that the facts show to the contrary.

8
9
10

> And Mr. Duran is taking this action out of concern for Ms. Repkow as well as for Mr. Brewer. I'm sure she doesn't see it that way, but that's the bottom line.

11  RT 2187.

12        Ms. Repkow persisted in asserting her belief that the OPD was wrong about

13  her ability to competently represent petitioner. RT 2187-2188. She spoke of issues regarding her

14  handing of mail to inmate clients and of a client having been found in possession of tobacco as

15  having occurred some time in the past and asserted with regard to her contact with the former

16  client that petitioner had no connection to that or to the mail issue. RT 2188. She argued that

17  any bad judgment she may have shown had no connection to petitioner or her ability to represent

18  him. RT 2189. This portion of the in camera hearing outside petitioner's presence concluded

19  after her assertion that:

20
21

> It's still my position that I don't believe that anything has occurred or changed or come to the attention of my office that justifies the change in position from Friday to today's date.

22        The Court: That's the bottom line.

23        Mr. Manning: That's the bottom line.

24  RT 2189.

25  The court then adjourned, promising a ruling on the next day. Id.

26  \\\\\\

1        The in camera hearing resumed the following day, on April 3, 2001, this time

2   including petitioner, as well as the judge, Repkow, Manning and Loehr.   RT 2190.  Repkow laid

3   out for the judge in some detail her work on petitioner's case in an effort to counter any

4   allegations that petitioner might have ineffective assistance of counsel (IAC) should she proceed

5   as his attorney, beginning with her assignment as his representative in January of 1997.  RT

6   2191-93.  She reiterated in this hearing in which the petitioner was present that he wished to keep

7   her as his counsel notwithstanding the conflict her office claimed, stating that it was the office

8   which had a conflict with her about her representing petitioner, clearly intimating no conflict of

9   her own with petitioner.  RT 2193-94.   Her proposed solution was to present an alternative of

10  resigning from the OPD and asking the court to appoint her as counsel for petitioner.  RT 2194.

11  The court found the proposal premature and closed and sealed the in camera hearing, indicating

12  that a ruling would be made on the OPD's motion before all counsel and defendants.  RT 2194-

13  2195.  Shortly thereafter, the court ruled against the OPD's motion, denying it on the basis that

14  there was no actual conflict of interest identified and as to any potential conflict of interest,

15  which the court found to exist more between the OPD and Ms. Repkow, rather than between

16  Repkow and petitioner, petitioner knowingly waived any such conflict.  RT 2197-2206.

17       The following colloquy then occurred between the trial judge and petitioner.  FAP

18  P&A (hereafter, FAP), pp. 24-27:

19       THE COURT: [You] have heard the concerns, have you not, of the
     Public Defender's office with respect to her continued
20       representation of you in this matter?

21       DEFENDANT BREWER: Yes, but I don't understand some of
     them, like IAC and all that.
22

23       THE COURT: Forgive me. The IAC referencing ineffective
     assistance of counsel, meaning the attorney is not able to
     effectively represent his or her client.
24       Is there anything else you had not understood?

25       DEFENDANT BREWER: Well, pretty much all of it, but I still
     want Ms. Repkow to represent me.
26

1   THE COURT: When you say pretty much all of it, you don't understand all of it?

2

3   DEFENDANT BREWER: I mean, not really.

4   THE COURT: Well, let me just very briefly inform you that you know at this time Ms. Repkow is employed by the Public Defender's office?

5

6   DEFENDANT BREWER: Yes, sir.

7   THE COURT: Okay.  And you understand that Mr. Manning and Mr. Loehr have made a request of this Court that the Public Defender's office be relieved from representing you. You're aware of that?

8

9   DEFENDANT BREWER: Yes, sir.

10   THE COURT: And you are aware of the reason for making that motion?

11

12   DEFENDANT BREWER: Yes, sir.

13   THE COURT: And that reason is that they do not feel that Ms. Repkow will be able to effectively represent you in this case. You understand that?

14

15   DEFENDANT BREWER: Yes, sir.

16   THE COURT: And one of the reasons for that claim by the Public Defender's office is that there may be issues that Ms. Repkow may have to deal with with respect to her employment with that office which they feel may affect her ability to be focused on this case completely.  Do you understand that?

17

18   DEFENDANT BREWER: Yes, sir.

19

20   THE COURT: Are you following everything up to this point?

21   DEFENDANT BREWER: (Nodding head affirmatively.)

22   THE COURT: You have to stay [sic] yes so we have it on the record.

23   DEFENDANT BREWER: Yes, sir.

24   THE COURT: All right. The issue of the conflict of interest, as I stated earlier, is whether or not Ms. Repkow's representation and her effectiveness to represent you might in some way be distractive or diluted because of some other factors in her life whether it be personal, employment wise or other issues. Do you understand

25

26

1    that?

2    DEFENDANT BREWER: Yes, sir.

3    THE COURT: That is the main reason – correct me if I'm wrong
4    Mr. Manning or Mr. Loehr – that the Public Defender's office is
     not comfortable with Ms. Repkow continuing to represent you.
5    Do you understand that, Mr. Brewer?

6    DEFENDANT BREWER: Yes.

7    THE COURT: And that they're concerned her attention may be
     divided among other things. I'm trying to repeat this so there's no
8    question. You understand that?

9    DEFENDANT BREWER: Yes.

10   THE COURT: It is possible that if you proceed with your current
     counsel, Ms. Repkow, that she might be distracted for some period
11   of time and that however slightly, that that may increase your
     chances of being convicted in this matter. Do you understand that?

12   DEFENDANT BREWER: Yeah, I think so, yes.

13   THE COURT: If you don't, clarify this because I'm trying to go
     as detailed as I can and try to give you all the potential problems
14   you may run into.

15   The position is that if Ms. Repkow, or anyone for that matter, may
     be distracted by whatever's going on in their personal life that
16   they may not be able to devote their full time to your case. That's
     what the Public Defender's office is saying. Ms. Repkow is
17   saying that it won't. I want to make sure that you understand both
     sides.  Do you see the situation here?

18   DEFENDANT BREWER: Yes.

19   THE COURT: And you understand that you have the right to be
20   represented by an attorney who is conflict free. In other words,
     can devote substantially all of his or her time to representing you
21   in this case. Do you understand that?

22   DEFENDANT BREWER: Yes.

23   THE COURT: Do you feel that you have had an adequate time to
     discuss Ms. Repkow's continued representation of you with her?
24   Have you talked about this?

25   DEFENDANT BREWER: Yes.

26   THE COURT: Are you comfortable that you had sufficient time

                                    24

1          to talk to her about this whole issue?

2          DEFENDANT BREWER: Comfortable with her?

3          THE COURT: Yes.

4          DEFENDANT BREWER: Yes.

5          THE COURT: I have called for and is present, there is an attorney from the Indigent Defense Panel present in this courtroom. I am going to make an offer to you at this time that you speak to another attorney regarding this possible conflict. Do you wish to do this, speak to another attorney?

8          DEFENDANT BREWER: No. No, sir.

9          THE COURT: You're comfortable with the decision that you've make in this matter?

10         DEFENDANT BREWER: With Karol representing me?

11         THE COURT: Yes, absolutely.

12         DEFENDANT BREWER: Yes.

14    RT 2202-2206.[10]

15          Petitioner contends further that the trial court "misadvised" him with regard to the

16    facts disclosed at the hearing to which he was not privy, emphasizing the following excerpted

17    statement by the court from the portion of the trial transcript set forth above:

18          I'm trying to go as detailed as I can and try to give you all the potential problems you may run into.

19

20          The position is that if Ms. Repkow, or anyone for that matter, may be distracted by whatever's going on in their personal life that they may not be able to devote their full time to your case. That's what the Public Defender's office is saying. Ms. Repkow is saying that it won't. I want to make sure that you understand both sides.  Do you see the situation here?

23    FAP, p. 34, citing RT 2204-2205.

24

_____

25      [10] The court has transcribed this colloquy, as well as any other excerpts from the trial record, directly from the Reporter's Transcript, rather than from petitioner's or respondent's briefing, in order to most precisely reflect any exchange as it stands in the record.

Petitioner again confirmed that he wanted Repkow to continue as

his counsel, after the trial court denied the public defender's motion to withdraw.  FAP, pp. 27-

28, citing RT 2206, 2217.  After Repkow was appointed, in her individual capacity, as counsel,

following her resignation from the public defender's office, CT 2351-2354; RT 2215-2219, the

trial judge had petitioner state on the record that he wanted Repkow to continue representing

him, but petitioner emphasizes that he stated at that point that he was only aware of those matters

discussed in court:

> The Court: Mr. Brewer, you were present at the time that the public
> defender's office came in; is that correct?
>
> Defendant Brewer: *Other than when you sent me out.*
>
> The Court.  Pardon?
>
> Defendant Brewer: *Other than when you sent me out.  And I didn't
> know what you were talking about.*

RT 2225. (Emphasis added)[11]

<u>Exclusion from a portion of the conflict hearing, and failure to advise of facts at hearing violated</u>

<u>due process</u>

State Court's Reasoning

The appellate court's rationale on the issue of waiver and conflict is excerpted

below:

> Brewer's more substantial contention is that the full nature of
> Repkow's potential conflict was not disclosed to him, particularly
> since part of it was discussed at a closed hearing where he was not
> present. He contends his waiver of a potential conflict was not fully
> informed and therefore was not valid.
>
> Before addressing the contention it is useful to define the scope
> and nature of the potential conflict asserted by the Public
> Defender's Office. As discussed above, there was an initial concern
> that confidences of a prior client might have to be revealed, but this

---

[11] It may have been that the court was referring to the initiation of representation by the
Public Defender; however, what is important is petitioner's response that he did not know what
went on during the in camera hearing.

concern turned out to be unfounded, as neither confidences nor even the identity of the prior client were revealed. The Public Defender's Office raised two concerns about Repkow's continued representation of Brewer. First was the concern that because of personal issues (her relationship with a prior client) and employment issues (the investigation that might lead to her termination) she might be distracted from representing Brewer; indeed, she had been so distraught she was unable to attend court. We shall refer to this potential conflict as the "distraction conflict." The second issue was the belief that Repkow's prior (and perhaps ongoing) conduct called into question her professional judgment and rendered her incapable of providing effective assistance to a client. We shall refer to this potential conflict as the "competency conflict."

"When a trial court knows or should know that defense counsel has a possible conflict of interest with his client, it must inquire into the matter [citations] and act in response to what its inquiry discovers [citation]. If the court determines that a waiver of a conflict of interest by the defendant is called for, it must assure itself that ' "(1) the defendant has discussed the potential drawbacks of [potentially conflicted] representation with his attorney, or if he wishes, outside counsel, (2) that he has been made aware of the dangers and possible consequences of [such] representation in his case, (3) that he knows his right to conflict-free representation, and (4) that he voluntarily wishes to waive that right." [Citations.]' [Citation.] A trial court's failure to inquire into the possibility of a conflict of interest or to adequately respond to its inquiry is reversible error only if the defendant shows 'that an actual conflict of interest existed and that that conflict adversely affected counsel's performance.' [Citation.]" ( *People v. Jones* (1991) 53 Cal.3d 1115, 1136-1137.)

"In deciding whether a defendant understands the nature of a possible conflict of interest with counsel, the trial court need not explore each foreseeable conflict and consequence. [Citation.] Nor does a defendant's waiver of conflict-free counsel extend merely to matters discussed on the record. [Citation.]" ( *People v. Sanchez* (1995) 12 Cal.4th 1, 47-48.) Strict rules are neither necessary nor workable in this situation. ( Ibid.)

As to the potential "distraction conflict" the trial court fully performed its duty. The court determined that Brewer (1) had discussed the potential conflict with Repkow, (2) had declined the opportunity to discuss it with another attorney, (3) was aware of the dangers and possible consequences of proceeding, including a greater risk of conviction, and (4) wished to waive the potential conflict. The court advised Brewer of "the basic problem;" it was not required to explain every conceivable ramification. ( *People v. Clark* (1992) 3 Cal.4th 41, 140.)

In any event, Brewer cannot show that an actual conflict of interest existed and that conflict adversely affected Repkow's performance. ( *People v. Bonin* (1989) 47 Cal.3d 808, 837-838.)

As to the potential "competency conflict," we are not convinced this is a conflict that could be waived. We seriously question whether Brewer, or any defendant, could waive effective assistance of counsel. (See *People v. Sapp*, *supra*, 31 Cal.4th 240, 255.) Rather, should this potential "conflict" become actual-that is, Repkow fail to provide effective assistance-the trial court would have to act. As we discuss below, the potential never turned into the actual. Instead of seeking a waiver from Brewer, the trial court determined there was no ineffective assistance of counsel, so no action was then necessary. The trial court acted properly in this regard.

Brewer contends he had the right to be advised of Repkow's relationship with the prior client, analogizing the situation to *People v. Jackson* (1985) 167 Cal.App.3d 829. In *Jackson*, after the conclusion of the trial, defendant learned his attorney had a dating relationship with the prosecutor and he moved for a new trial, which was denied. On appeal he claimed ineffective assistance of counsel and prosecutorial misconduct. ( *Id*. at p. 831.) This court reversed the judgment. The court found that the close relationship between counsel opposing each other gave rise to speculation that counsel's professional judgment and zealous representation were compromised. "No matter how well intentioned defense counsel is in carrying out his responsibilities to the accused, he may be subject to subtle influences manifested, for example, in a reluctance to engage in abrasive confrontation with opposing counsel during settlement negotiations and trial advocacy." ( *Id*. at p. 833.)

No such concerns are present here because the relationship at issue was not with anyone involved in the trial. There was no indication that the relationship had any effect on Repkow's zealous representation of Brewer.

Brewer contends he was entitled to be present during the portion of the closed hearing where Repkow's conduct with the prior client was discussed. He relies on *Campbell v. Rice* (9th Cir.2002) 302 F.3d 892, in which the Ninth Circuit found a due process violation where defendant was completely excluded from the hearing on counsel's potential conflict. Defense counsel faced a criminal prosecution on a drug charge by the same district attorney's office that was prosecuting defendant. ( *Id*. at p. 895.) The court held a hearing with the defense counsel and the prosecutor; defendant was not present nor informed of the hearing. The prosecutor told the court his office had made defense counsel an offer that was neither more severe nor more lenient than that offered to other eligible defendants; counsel would not receive favorable treatment.

Defense counsel had no comment and the court found no conflict. (*Id*. at pp. 895-896.)

On habeas review, the Ninth Circuit rejected defendant's conflict of interest claim, but found merit in his due process claim. ( *Campbell v. Rice*, *supra*, 302 F.3d at pp. 897-898.) The court found the hearing to determine if defendant's right to conflict-free counsel had been violated was a critical stage of the criminal proceedings. ( *Id.* at p. 899.) Defendant's presence would have contributed to the fairness of the proceedings because no one was representing his interests. ( *Ibid.*)

We find *Campbell v. Rice*, *supra*, 302 F.3d 892 distinguishable. First, Brewer was not absent from the entire hearing on the issue of whether his attorney had a conflict; he was present for most of the hearing and the trial court described the potential conflict to him and took an informed waiver. Second, there was always someone present to represent Brewer's interests because there were two members of the public defender's office, counsel of record, present.

These two points also distinguish this case from *King v. Superior Court* (2003) 107 Cal.App.4th 929, 947, in which this court found a hearing to determine whether defendant had forfeited the right to counsel was a critical stage of criminal proceedings at which defendant was entitled to assistance of counsel. At issue in *King* was the nature of the entire hearing to determine forfeiture of counsel, not a small portion of the hearing as here. Further, in *King*, defendant was completely denied assistance of counsel because his attorney argued against him. ( *Id*. at p. 950 .) Here, Brewer's interests were always represented.

The discussion during the portion of the hearing where Brewer was excused went primarily to the alleged "competency conflict." Manning disclosed the details of Repkow's contact with the prior client to explain why the public defender's office believed she could not provide effective assistance of counsel. The issue, therefore, was whether Repkow could provide effective assistance of counsel, not whether she-or the public defender's office-had a disabling conflict. Brewer offers no authority that defendant's right to be present extends to a hearing on counsel's competency. The California Supreme Court has suggested otherwise.

In *People v. Hovey* (1988) 44 Cal.3d 543, defendant was not present during a hearing to determine if defense counsel was continuing to provide effective assistance. After the hearing, the trial court found counsel competent to represent defendant. The high court found no error. "We conclude that defendant was properly excluded from the competency hearing, for it is very doubtful as a matter of sound public policy that a criminal defendant's presence should be required at in-chambers inquiries regarding his counsel's competence, unless the defendant himself

has initiated the inquiry. Attendance at such hearings could well undermine the confidence and cooperation so necessary to insure an effective representation." ( *Id*. at p. 573.)

Advised of a potential conflict facing defense counsel, the trial court inquired into the conflict and responded by eliciting a waiver from Brewer. We find both the inquiry and the response adequate.

People v. Brewer, 2005 WL 290021 *11-14; Lod. Doc. 1, pp. 23-29 .

Arguments

As noted, petitioner claims that by his being excluded from the portion of the hearing wherein matters were delved into with more detail, he was left unaware that his counsel had a personal relationship with another client, was barred from using the attorney-client or pass through window at the jail, that her phone calls were being intercepted or that the OPD had doubts about her competency based upon their review of other matters.

Petitioner maintains that he came to regret what he characterizes as his "uninformed waiver" and that the representation by the trial judge that he had been "as detailed as I can" was untrue as having "omitted nearly every fact of any importance regarding the problem with Repkow's continued representation." FAP, p. 34. His regret took the form of some nine subsequent Marsden motions,[12] in some of which Repkow joined. Id. Specifically, petitioner argues that the trial judge did not inform petitioner that Repkow would soon no longer have access to the jail's attorney client room (or pass through window), which required them to engage in loud and public conversations when the restriction was instituted about which petitioner immediately complained. FAP, p. 34, citing RT 6036-6043, 6246-6248. Petitioner maintains that Repkow admitted that this restriction resulted in their communications being "all but impossible to conduct properly." FAP, pp. 34-35, citing 6231-6233, 6237-6238, 6250-6251. Petitioner also argues that he was never given the "actual 'details,'" by which he evidently means, the precise nature of, the OPD's complaints against Repkow. FAP, p. 35. But, of course,

---

[12] Although respondent has failed to lodge the transcripts of these in camera proceedings with this court, the substance of these motions does not appear to be at issue.

1  the trial court did not, as can be seen by the recounting of the now unsealed in camera hearing,

2  actually delve into those precise details.  For example, when petitioner accuses the court of

3  having hidden "the fact that the dispute centered around an extremely embarrassing series of

4  incidents involving Repkow's involvement with another client" which the petitioner would only

5  belatedly discover "through humiliating jeers from the jailers, punctuated by headlines in the

6  paper" (id., citing RT 7819-7836), it does not appear from the record of the portion of the hearing

7  from which he was excluded that the judge was informed of that level of detail and the fact that

8  the incidents might become public was speculative.

9           Petitioner maintains that all he knew from the court's disclosure was that his trial

10  counsel had "personal" problems.  FAP, p. 35.  Of course, this discounts that petitioner was

11  present for much of the hearing wherein the OPD represented that it had problems with Repkow

12  regarding her involvement with a former client, as well as with vaguely described matters with

13  other clients, and had concerns about her judgment, as well as about the potential for information

14  about Repkow becoming public while trial proceeded; on the other hand, this information was

15  kept pretty broad and general in petitioner's presence.  In any event, petitioner maintains that the

16  many <u>Marsden</u> motions prove that petitioner would never have waived the conflict had he been

17  adequately informed of the problems that were about to ensue and that the exclusion of him from

18  a crucial hearing combined with the court's lack of full disclosure of what was revealed therein

19  violated petitioner's right to due process.  FAP, pp. 35, 37.

20           Respondent concedes that petitioner was not informed about the inappropriate

21  relationship and its details or about his counsel's loss of the use of the attorney client jail room.

22  Answer, p. 20.  Respondent points out that he was notified that the distractions to which Repkow

23  was subject could increase his chances of conviction and that the OPD believed she could not

24  effectively represent him but maintain that petitioner has not shown he had a constitutional right

25  to the information regarding the OPD's doubts as to his counsel's competency revealed at the

26  portion of the hearing from which he was excluded.  Id.  Respondent minimizes petitioner's

1   complaints resulting from subsequent events, while conceding that the trial court neither advised

2   petitioner that he would be "teased by other inmates" because of Repkow's previous behavior or

3   that he would not be able to use the attorney client room at the jail with Repkow as his counsel,

4   which respondent characterizes as "inconvenient."  Id.  Respondent dismisses as not implicating

5   due process concerns any complaints about petitioner's being "teased by other inmates and

6   jailers," and while respondent admits that the difficulty in communication with his attorney

7   "hints at constitutional concerns," the state maintains that petitioner did not plead or prove that

8   he was prevented from speaking with his attorney and did not attempt to show any particular

9   information he was unable to share with her or that he was thereby unfairly "concretely hindered"

10   from presenting his defense.  Answer, p. 21.

11        As noted above, in his traverse, petitioner disclaims his prior contention that the

12   requisite prejudice for a Sixth Amendment violation could not be shown, basing his argument

13   with regard to prejudice on the "controlling authority" as articulated in  Bradley v. Henry, 510

14   F.3d 1093 (9th Cir. 2007)(en banc).  Respondent counters that this case is simply not applicable

15   insofar as it deals with whether or not a defendant can substitute retained for appointed counsel

16   in a certain situation and that the harmless error review applied was tailored to the error that was

17   alleged, although respondent takes issue with the Ninth Circuit's failure to apply the standard of

18   Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722 (1993)(whether an error "had

19   substantial and injurious effect or influence in determining the jury's verdict" [internal citation

20   omitted].  Sur-reply, p. 6.  Respondent maintains that in this instance the determination rests on

21   whether the state unreasonably applied clearly established Supreme Court precedent with regard

22   to petitioner's right to be present at trial and that the focus of such a determination must be an

23   analysis of the effect of any alleged error on the verdict, contending that petitioner wishes to

24   focus on the standard of whether there was a breakdown of the attorney client relationship

25   because petitioner has already conceded that he cannot show his counsel was ineffective.  Sur-

26   reply, pp. 6-7.

Analysis

    1. *Conflict of Counsel – Legal Standards*

        The Supreme Court has long recognized under the Sixth Amendment, "correlative" to the constitutional right to counsel, one's "right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103 (1981), citing Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708 [] (1980); Holloway v. Arkansas, 435 U.S. 475, 481, 98 S.Ct. 1173, 1177 [] (1978); see also, Alberni v. McDaniel, 458 F.3d 860, 869 (9th Cir. 2006); Lewis v. Mayle, 391 F.3d 989, 995 (9th Cir. 2004) ("The Sixth Amendment includes a correlative right to representation free from conflicts of interest," citing Wood, supra); Garcia v. Bunnell, 33 F.3d 1193, 1195 (9th Cir. 1994). To safeguard a defendant's right to conflict-free counsel, a trial court must initiate an inquiry when it knows or reasonably should know of the possibility of a conflict of interest. Wood, supra, 450 U.S. at 272, 101 S. Ct. at 1104; see also Wheat v. United States, 486 U.S. 153, 160, 108 S. Ct. 1692, 1697 (1988); Cuyler v. Sullivan, 446 U.S. 335, 347, 100 S. Ct. 1708, 1717 (1980). After inquiry, the court has the duty "either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] . . . too remote to warrant separate counsel." United States v. Crespo de Llano, 830 F.2d 1532, 1538 (9th Cir. 1987) (quoting Holloway v. Arkansas, 435 U.S. 475, 484, 98 S. Ct. 1173). [13]

        The Supreme Court has determined that where a trial court fails to inquire into a potential conflict of interest there must be a showing of defective performance, but not the additional showing under Strickland of a probable effect on the outcome of trial. Mickens v. Taylor, 535 U.S. 162, 174, 122 S. Ct. 1237, 1245 (2002); Vansickel v. White, 166 F.3d 953, 962 (9th Cir. 1999)(actual conflict of interest by counsel requires that defendant demonstrate adverse

---

    [13] Conflicts of interest broadly encompass all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or by his personal interests. See generally ABA, Model Rules Prof. Conduct rule 1.7 and com. thereto.

1  effect on counsel's performance, not upon the trial outcome).  In order to be entitled to relief

2  based on a lawyer's conflict of interest, "a defendant who raised no objection at trial must

3  demonstrate that an actual conflict of interest adversely affected his lawyer's performance."

4  Cuyler, 446 U.S. at 348, 100 S. Ct. 1708.   Thus, one making such a claim must show that:  1) his

5  attorney actively represented conflicting interests, and 2) the conflict "actually affected" the

6  adequacy of the attorney's representation.  Cuyler, 446 U.S. at 349-50, 100 S. Ct. 1708.[14]   Once

7  an actual conflict is shown, a defendant need not establish prejudice, but he must demonstrate

8  that the conflict adversely affected the lawyer's representation of his client.  See Cuyler, 446

9  U.S. at 349-50, 100 S.Ct. 1708.

10         In the case of a claimed potential conflict of interest, however, a showing of

11  prejudice as required by Strickland, supra, 466 U.S. at 692-94, 104 S. Ct. at 2067-68, must be

12  made.  Bonin v. Calderon, 59 F.3d 815, 827 (9th Cir. 1995); see also, Paradis v. Arave, 130 F.3d

13  385, 391 n.5 (9th Cir. 1997).

14         "A defendant may waive his right to the assistance of an attorney unhindered by a

15  conflict of interests."  Holloway, 435 U.S. at 483, n.5.  See also United States v. Allen, 831 F.2d

16  1487, 1494 (9th Cir. 1987("[o]f course, a defendant may waive his right to the assistance of an

17  attorney who is unhindered by conflicts . . . provided the waiver is given knowingly and

18  intelligently.")  Whether there is a proper waiver should be determined by the trial court and any

19  such waiver should appear on the record.  Johnson v. Zerbst, 304 U.S. 458, 464-65, 58 S. Ct.

20  1019 (1938).  In addition, whether a defendant has made a valid waiver of his Sixth Amendment

21  rights depends "upon the particular facts and circumstances surrounding that case, including the

22

23         [14] Petitioner could have premised his conflict claim more clearly as an ineffective
   assistance of counsel claim, contending his counsel had a potential conflict of interest which
24  prejudiced his defense, Stoia v. United States, 109 F.3d 392, 395 (9th Cir. 1997), but petitioner,
   by initially conceding that he cannot even show "adverse effect" in the actual conflict context has
25  essentially conceded that he cannot meet the more burdensome requisite prejudice standard
   (which standard, as noted, is articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct.
26  2052), applicable in the potential conflict scenario.

background, experience, and conduct of the accused."  Id.; Edwards v. Arizona, 451 U.S. 477, 482, 101 S. Ct. 1880 (1981).

2.  *Absence From the In Camera Hearing – Legal Standards*

Petitioner relies on Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987), which sets forth that due process guarantees "a defendant ... the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."   Respondent agrees in a sealed [sur-]reply to the traverse that Stincer, supra, is the clearly established law that is applicable but notes that therein it was found that a defendant's absence from a hearing concerning the competency of two witnesses who were minors did not violate due process.  Reply, p. 7.  Thus, it is clear that the primary focus of the issue here is the type of proceeding from which petitioner was excluded and its purpose.

3.  *Discussion*

The Court of Appeal in this case found that conflicts could arise in the situation where a counsel's ability to focus could be so diverted by unrelated matters that enough attention was not directed to the case at hand.  It went on to find that the trial court properly inquired into the asserted conflict. The undersigned agrees.  For reasons which will become apparent, the initial focus here is petitioner's absence from the in camera hearing and his afterwards waiver of any conflict.

Three Ninth Circuit cases provide instruction, but are not ultimately on point because of the nature and purpose of the in camera hearing here.  In the most important case, Campbell v. Rice, supra, 408 F.3d 1166 (en banc), a habeas petitioner's trial attorney had been arrested herself for transporting methamphetamine into the County jail.  In an in camera hearing which petitioner was not invited to attend, the issue of counsel's ability to represent petitioner despite the looming charge against her was addressed.  The trial court found insufficient or no conflict.  The Ninth Circuit discussed the conflict issue first, assumed the conflict, and found insufficient adverse effect or prejudice.  It then discussed petitioner's absence form the hearing,

1   but found that since petitioner could not establish prejudice or adverse effect from his attorney's

2   representation, petitioner's absence from the in camera hearing was similarly non-prejudicial.

3           In the present case, however, a primary purpose of the hearing was to obtain facts

4   to assess the already found conflict, *and* to obtain facts with which to advise petitioner so that he

5   could waive any conflict if he so desired.  Because petitioner was going to have to make an

6   informed choice in a waiver proceeding, his presence was necessary such that he could hear the

7   rather impassioned speech by the Public Defender personnel as to why Repkow was not

8   competent to proceed further in the trial.  There would be no prejudice, nevertheless, if petitioner

9   was advised on precisely the same facts by some method outside the in camera hearing.

10          His counsel Repkow advised that she had "generally" advised petitioner about the

11  facts, but not enough is known about the advisement to make use of it at present.  More will be

12  said about this in connection with the evidentiary hearing.

13          The Court of Appeal at *13 (2009 WL 290021) rejected petitioner's claim that he

14  should have been present at the in camera hearing because (a) he had been present at all the

15  substantial in-court discussion about the Repkow problem, and (b) two members of the Public

16  defender's office were present arguing the position petitioner would later take.  Focusing on this

17  latter justification first, the undersigned finds it AEDPA unreasonable because it begs the issue

18  here.  It was *petitioner* who was going to have to make a waiver decision, not these counsel.  It

19  was *petitioner* who was going to have to be informed of the facts in order to make that

20  determination.  Indeed, as set forth in the facts, the trial judge had emphasized the need for

21  petitioner to be present to hear the facts, and then inexplicably determined that petitioner did not

22  have to hear the detailed facts.

23          The first justification advanced requires much more thought.  If reviewed *de novo*

24  the undersigned would find that petitioner's presence at the hearing, in the words of <u>Stincer</u>

25  would have "contribute[d] to the fairness of the procedure."  Again, petitioner was entitled to be

26  informed as much as possible about Repkow's problems, and he needed to be there where the

36

facts of the conflict were substantially fleshed out.  However, utilizing the required AEDPA standard, the undersigned has much pause.

It is true that petitioner heard quite a bit about Repkow's problems in court.  The undersigned has gone to great lengths to exhaustively detail what petitioner heard.  Nevertheless, the sterility of what had been discussed in court was stripped away at the in camera hearing.  These unvarnished facts disclosed at the in camera hearing would have been important to the reasonable defendant in making his later decision.  It is quite one thing to know generally of a personnel problem that may lead to discipline, and another to assess the weight and importance of that general knowledge when confronted with the specific facts.  If given the specific facts, e.g., passing contraband in the jail, public exhibitions outside the jail, prospect of being denied use of the attorney-client room, petitioner might well have thought that his counsel was acting bizarrely, and that such action could well work to his detriment if she exhibited more or other bizarre behavior.  For example, one could be facing discipline because of an insubordinate attitude, or be facing discipline because the employee's acts went beyond the pale of any reasonable conduct.  Any reasonable person when facing a choice of continued association with the employee/counsel would want to know the facts which distinguished the situation.  Certainly, the bizarreness of Repkow's behavior was indirectly referenced in court, but it did not have the detail which could make the difference.

The undersigned further emphasizes the common sense fact that if the in camera hearing were necessary for the judge to hear the unvarnished facts, why would it be any less necessary for the decision maker on the conflict waiver, petitioner, to hear those facts.

Moreover, the reason for petitioner's exclusion from the hearing, Repkow's privacy interests, pales in comparison to petitioner's Sixth Amendment interest in being informed.  If Repkow had generally advised petitioner about the problems with another client, fairness dictated that she advise him, or he be advised at hearing, all the way.  After all, it was Repkow who insisted that she could adequately represent petitioner, and that the Public Defender

37

1   was essentially overreacting.  If the facts were not a "big deal," why could they not be disclosed.

2   If they were a "big deal" –, i.e., demonstrating conduct very unbecoming of a member of the

3   defense bar, all the more reason for petitioner to know about them.  Finally, Repkow's problems

4   were not exactly a closely guarded secret.  Her public exhibitions and participation in phone

5   calls, which she had to have known were being listened to, cuts against any preservation of a

6   privacy interest.[15]

7          The record must show that a Sixth Amendment waiver was "made with eyes

8   open." United States v. Farhad, 190 F.3d 1097, 1099 (9th Cir. 1999); Lewis v. Mayle, 391 F.3d at

9   996-97 (9th Cir. 2004) (finding waiver invalid and state court objectively unreasonable even

10  where petitioner signed a written waiver as there was no evidence that he understood the

11  "specific ramifications" of the waiver as he did not seek outside counsel's advice "and had only a

12  cursory discussion with the judge").

13         Concluding in Lockhart v. Terhune, 250 F.3d 1223, 1232 (9th Cir. 2001), that the

14  state court's determination that a petitioner's waiver had been knowing and intelligent to be "an

15  unreasonable application of Supreme Court precedent," the Ninth Circuit stated:

16         For a waiver to be knowing and intelligent, the defendant must
           have been "sufficiently informed of the consequences of his
17         choice." Evans v. Raines, 705 F.2d 1479, 1480 (9th Cir.1983).
           Like other circuits, "[w]e do not require that a defendant predict
18         that particular dilemmas will present themselves, but we do require
           that a defendant know about all the risks that are likely to
19         develop." [Internal citations omitted.]
           ....
20
           We must "ascertain with certainty" that Lockhart knowingly and
21         intelligently waived his right to conflict-free counsel, Maiden [v.
           Bunnell], 35 F.3d at 481 n. 5 [9th Cir. 1994] (citing Johnson v.
22         Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, [] (1938)), by
           "focus[ing] on what the defendant understood." United States v.
23         Keen, 104 F.3d 1111, 1114 (9th Cir.1996).

24  _____

25         [15] Nor did Repkow's acts of misconduct qualify in any respect as attorney-client
    privileged vis-a-vis the object of her affections.  Passing contraband and acting out improperly on
26  a personal relationship is not the passing of confidential information germane to the attorney-
    client relationship.

1   Lockhart, supra, at 1232-33.[16]  See also Lewis v.Mayle , supra (a valid waiver requires a

2   knowledge of the ramifications of the waiver decision.)

3           Discussion must also be made of Hovey v. Ayers, 458 F.3d 892 (9th Cir. 2006).  In

4   Hovey  the trial judge became suspicious of defense counsel's overall competence because of

5   lack of preparedness, a desire to build error into the record, or because of personal distractions.

6   The trial judge sua sponte had several in camera hearings where he questioned counsel outside of

7   the presence of the prosecution and the defendant.  The defendant later claimed that he had been

8   improperly excluded from the hearings.  The Ninth Circuit assumed the right to be present at the

9   hearing, but held that defendant could not have contributed anything significant to the court's

10  determination of counsel's effectiveness on account of trial conduct, and further found that if the

11  defendant wished to object to his counsel's conduct, the trial judge was ready to hear such a

12  challenge, if and when it was made.  Id. at 902-903.  Here of course, the issue is one of waiver of

13  conflict, a conflict which had been determined by the trial court to exist, and whether petitioner

14  was adequately informed to make the waiver.

15          Finally, the undersigned refers to Bradley v. Henry, supra, 510 F.3d 1093, (en

16  banc), amended 518 F.3d 657, in which the plurality decision found that the defendant had been

17  improperly excluded from a hearing where it had been determined that the defendant could not

18  afford counsel of choice.   Although the plurality determination is not binding precedent, it does

19  show the extent to which a defendant's right to be present is important, and prejudicially denied,

20  if the presence of defendant has a real and definable purpose.  Here, petitioner's presence was

21  required to be fully informed for his waiver decision.

22          Given the above discussion, the undersigned tentatively finds that petitioner's

23  exclusion from the in camera hearing was AEDPA error.

24

---

25      [16] In Lockhart, 250 F.3d at 1226, the Ninth Circuit stated that prejudice is presumed when
    an unconstitutional actual conflict of interest is alleged and that harmless error analysis does not
26  apply; however, as observed previously, this is no longer the law.

4. *Where to Go From Here*

The undersigned could, under the authority discussed in the *Issues* section, finally find error, and then go on to assess, with respect to Claim 2, whether the waiver error resulted in an actual conflict with adverse effect, or go on to assess whether the found potential conflict resulted in Strickland prejudice.  However, the waiver issue is not complete.  If counsel (Repkow) had privately related to petitioner the essential facts which had been discussed at the in camera hearing, the court would find that petitioner's exclusion from the hearing was harmless error.  An evidentiary hearing is necessary to determine this fact.

The waiver issue could indeed be dispositive of this petition, if found in favor of respondent, given that petitioner has abandoned the remainder of the claims in this petition.  That is, petitioner would be bound by a valid waiver despite the later occurrence of facts which may have indicated that the waiver was ill advised.  While later, defective actions of counsel, or other error, might be independently assessed in the ordinary habeas case, there are no such issues remaining in this case.

The undersigned is well aware of the ordinary strictures set forth in the AEDPA legislation regarding the holding of an evidentiary hearing.  A *petitioner* (applicant) must have shown that he was diligent in attempting to develop the facts in state court which need to be developed in an evidentiary hearing in federal court.  28 U.S.C. § 2254(e)(2).  The undersigned is also well aware of the need to find that an error would be AEDPA error before it is worthwhile to expend the resources for evidentiary hearing, Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 1940 (2007), something the undersigned has found.

However, this is a unique situation in several respects.  First and foremost, the undersigned requires an evidentiary hearing to come to a fair and accurate determination of the waiver issue.  Secondly, it is *respondent*, not petitioner, that needs the evidentiary hearing, and as observed above, the statute does not task respondent with any burden.  The undersigned will not repeat here the mountain of authority which demonstrates that AEDPA was meant to give teeth

40

1   to the previous hortatory principle that the finality of state convictions should not be unduly

2   upset.  But if an evidentiary hearing were not held, it might well result in the overturning of a

3   state conviction, which on the merits of the evidence of record developed in state court, may not

4   deserve to be overturned.

5            Thirdly, the procedural status of the case is out of the ordinary.  The parties and

6   the Court of Appeal believed that the issue could be determined on the record of the trial court.

7   However, the undersigned believes that to have been determined in error.[17]  It makes absolutely

8   no AEDPA sense at this time to return this simple factual issue of what petitioner was told by his

9   client to the state courts.

10           Accordingly, IT IS HEREBY ORDERED that:

11           1.  The provisional seal placed upon the reporter's transcript of an in camera

12   hearing, identified as respondent's Lod. Doc. 9, and filed under seal at docket # 59 on March 6,

13   2009, is hereby lifted, and the Clerk of the Court is unseal that document;

14           2.  An evidentiary hearing is to be set for the purpose of determining whether or

15   not petitioner's waiver was sufficiently informed, requiring petitioner's trial counsel, Karol

16   Martin Repkow, and any other individual who might have relevant information, to be present as a

17   witness; and

18           3.  Counsel are to confer with each other and the courtroom deputy for the

19   undersigned, Valerie Callen, at (916) 930-4199, to set a date for the evidentiary hearing within a

20   \\\\\

21   \\\\\

22   \\\\\

23

24           [17] The undersigned makes no criticism of the trial court whatsoever.  Habeas review is
     hindsight review conducted at length, over the course of months, in chambers.  This trial, on the
25   other hand, presented issues which had to be decided expeditiously with the resources at hand, in
     what was indisputably an extremely complex proceeding.  Nevertheless, the undersigned has a
26   job to perform in habeas review, and the fact that the undersigned could not have done a better
     job than the trial judge does not enter into the equation.

1  reasonable time, that is, the hearing should be scheduled on the court's calendar to proceed no

2  later than 90 days from the filing of this order.

3  DATED: November 24, 2009                          /s/ Gregory G. Hollows

4  _____
                                                  GREGORY G. HOLLOWS
                                                  UNITED STATES MAGISTRATE JUDGE

5  GGH:009
   brew0382.evi

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26